# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 27, 2021

Lyle W. Cayce
Clerk

No. 19-20841

IN THE MATTER OF: 3 STAR PROPERTIES, L.L.C.

*Debtor*,

SED HOLDINGS, L.L.C.,

*Appellee Cross-Appellant*,

*versus*

TM PROPERTY SOLUTIONS, L.L.C.; BILTMORE FUNDING, L.L.C.; TMPS, L.L.C.; MARK HYLAND; HOME SERVICING, L.L.C.,

*Appellants Cross-Appellees*,

DON ST. JOHN; HOWARD L. NATIONS, A PROFESSIONAL CORPORATION,

*Cross-Appellees*.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:17-CV-1655

---

Before HAYNES, DUNCAN, and ENGELHARDT, *Circuit Judges*.

No. 19-20841

On Petition for Panel Rehearing

Stuart Kyle Duncan, *Circuit Judge*:

The motion to file out-of-time motions for panel rehearing and to recall the mandate is GRANTED. The motions are DENIED. We withdraw our previous opinion, reported at 2 F.4th 387, and substitute the following:

A federal jury found that 3 Star Properties fraudulently sold SED Holdings millions in loans and awarded SED over $14 million in damages. From that verdict, we must untangle a snarled skein of appeals and cross-appeals. We affirm the liability judgment but, concluding the damages award was excessive, we remand for remittitur of the award. We vacate a separate judgment against Home Servicing for breaching a contract to service the loans, and we remand for a new trial on that claim.

## I. Background

### A. Facts

In 2014, SED contracted with 3 Star to buy 1,235 non-performing residential mortgage loans.[1] 3 Star made certain representations about the loans—that it was their sole owner, that it had the right to sell them, and that they would be sold "free and clear"—that were not true. In fact, at the time the parties signed the loan sale agreement ("LSA"), 3 Star was a shell company that did not own the loans, had no assets, and did not generate revenue. Three other companies owned the loans: Biltmore Funding

---

[1] SED is a North Carolina company. 3 Star is a Nevada company based in North Carolina.

No. 19-20841

("Biltmore"); TM Property Solutions[2] ("TM Property"); and Biltmore Funding II ("Biltmore II"), all of which were partly owned and/or managed by Mark Hyland. Hyland authorized those entities to sell the loans to 3 Star, but only after 3 Star purportedly sold them to SED. Hyland had authorized 3 Star to market the loans to SED and represent it owned them, despite knowing that was untrue. Hyland and James Johnson, 3 Star's managing member, crafted the 3 Star-SED LSA and agreed to split the profits. SED was in the dark about all of this.

Under the LSA's terms, SED bought the loans for nearly $14 million. SED would pay $2 million in cash at closing, $2 million about a month later, and the balance by year's end. The loan proceeds were to be transferred to Mark Dykes, an attorney with Nations Law Firm, who would act as escrow agent until SED paid 3 Star in full. The LSA provided that "the parties will use Home Servicing . . . to service the loans, as more fully outlined in the Collateral Agreement." The collateral agreement between 3 Star and SED provided that SED would "not modify the servicing agreement presently in place for the [loans] without written approval of [3 Star]." The referenced servicing agreement was a residential special servicing agreement ("RSSA") between Home Servicing and TM Property.

After SED had fronted $4 million, things unraveled. SED discovered most of the loans were defective. It tried, unsuccessfully, to "put back" nearly all the loans under a provision in the LSA.[3] Then it started suing.

---

[2] The parties also refer to an entity named "TMPS." It is unclear whether TM Property Solutions and TMPS are different entities. Hyland testified the two are interchangeable, and no party distinguishes them. We also treat them as one and the same.

[3] The LSA outlined the "put back" procedure, providing that within forty-five days of closing, SED could notify 3 Star of any loan that (a) was not secured by a valid first mortgage, or (b) had an incurable documentary defect. 3 Star would then have forty-five

## B. Procedural History

SED first filed suit in a North Carolina state court against 3 Star, Johnson, Hyland, TM Property, and Home Servicing, seeking to recover damages from the LSA transaction (the "North Carolina suit"). About two months later, 3 Star sued SED in a Harris County, Texas state court for allegedly breaching the LSA (the "Harris County suit"). Biltmore, TM Property, and others intervened in the Harris County suit, moving to substitute for 3 Star, asserting superior title to the loans at issue, and bringing their own claims against SED. SED counterclaimed against 3 Star, Biltmore, and TM Property. Biltmore and TM Property then filed an involuntary bankruptcy petition against 3 Star. The North Carolina and Harris County suits were removed to bankruptcy court and consolidated, but after the bankruptcy court approved the sale of the Biltmore and TM Property pools of loans, the suits proceeded in the Southern District of Texas.

Meanwhile, Biltmore II was in the midst of separate litigation against 3 Star. Shortly after the North Carolina and Harris County suits were filed, Biltmore II sued 3 Star in a Tarrant County, Texas state court (the "Tarrant County suit"), seeking a declaratory judgment that it (Biltmore II) held title to the 473 loans it sold 3 Star because 3 Star never paid for them. SED intervened as a defendant, arguing that it, not Biltmore II, held title to the 473 loans and seeking a declaration of "clear and negotiable title to [all] the 1,235 mortgage notes" in the 3 Star-SED LSA. SED and Biltmore II settled before trial.[4] Biltmore II's claims against 3 Star, however, proceeded to a bench trial.

---

days to cure the defect. If SED put back a loan whose defect 3 Star did not cure during this period, 3 Star would owe SED 19.5 percent of the loan's unpaid balance.

[4] As part of the settlement, SED and Biltmore II agreed to "work together and cooperate with each other . . . to achieve an outcome whereby" Biltmore II was declared

The Tarrant County court held that Biltmore II had clear and negotiable title to the 473 loans. In reaching its judgment, the court examined the 3 Star-SED LSA, finding that 3 Star made various misrepresentations about the 473 Biltmore II loans; that 3 Star committed fraud on SED by attempting to sell 473 loans in which it had no ownership interest; and that the 3 Star-SED LSA was therefore void and unenforceable as to the 473 loans.

Back in the Southern District of Texas, the court made a number of pre-trial rulings to narrow the scope of SED's wide-ranging suit. The remaining claims were: (1) SED's fraudulent transfer claims against Biltmore, TM Property, Hyland, and 3 Star; (2) SED's breach of contract claim against Home Servicing; (3) SED's breach of contract and negligence claims against Brown & Associates; (4) SED's conspiracy claims against Hyland, TM Property, Biltmore, Brown & Associates, Dykes, 3 Star, and Johnson; and (5) Home Servicing's breach of contract counterclaim against SED. Those claims went to a jury, except SED's claims against 3 Star and Johnson, on which the court entered a default judgment for SED.

The jury found for SED on every claim. The final judgment held 3 Star and Johnson liable for fraud and Hyland, Dykes, Johnson, 3 Star, TM Property, and Biltmore jointly and severally liable for conspiracy to commit fraud. It awarded SED a $9,430,000 judgment against Dykes,[5] Johnson, 3 Star, TM Property, and Biltmore. The court also held Biltmore, TM Property, Hyland, and 3 Star liable for fraudulent transfer of SED's payments to 3 Star totaling $4,372,739; SED was entitled to avoidance of those funds and equitable subordination of TM Property's and Biltmore's claims.

---

"the owner of the [loans] with clear and negotiable title . . . free and clear of any claims by or through 3 Star." The parties would then split the proceeds of the loans, once liquidated.

[5] Dykes subsequently filed a notice of partial settlement, pursuant to which Dykes agreed to pay SED $425,000.

Finally, Home Servicing was held liable for breach of the Servicing Agreement, for which SED was awarded $300,000. The court subsequently denied Home Servicing's motion for new trial, Dykes and Hyland's motion to alter the judgment, and TM Property's motion to alter the judgment, as well as their joint renewed motion for judgment as a matter of law ("JMOL"). That brings us to this appeal.

Hyland, TM Property, and Biltmore ("Hyland Defendants") appeal the district court's partial denial of their motion to dismiss, various evidentiary rulings, the verdict, the final judgment, the equitable subordination order, and the district court's denial of their motions for new trial, JMOL, and to alter or amend the judgment. Home Servicing appeals the verdict and final judgment against it, as well as the order denying its motion for a new trial. SED cross-appeals. It contends primarily that the district court should not have dismissed certain claims against the Hyland Defendants, Home Servicing, Dykes, and Home Servicing's chief operating officer Don St. John.

## II. Discussion

### A. Hyland Defendants' Claims

#### 1. Res Judicata

As a threshold issue, the Hyland Defendants argue *res judicata* should have barred SED's claims against them because SED was involved in the Tarrant County suit, which already resolved the merits of this case. The district court rejected their motion to dismiss based on *res judicata*, a ruling we review *de novo*. *Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*, 976 F.3d 585, 588 (5th Cir. 2020). "Dismissal under Rule 12(b)(6) may be appropriate based on a successful affirmative defense, provided that the affirmative defense appears on the face of the complaint." *Ibid.* (cleaned up). A court may dismiss claims as barred by *res judicata* if the "bar is apparent from the

pleadings and judicially noticed facts." *Kahn v. Ripley*, 772 F. App'x 141, 142 (5th Cir. 2019) (per curiam).

The Tarrant County suit involved an entity not party to this appeal, Biltmore II. Biltmore II sued 3 Star, seeking a judgment that Biltmore II held title to the loans it sold to 3 Star. Understandably, SED intervened to assert that *it* had "clear and negotiable title" to all the loans in the LSA, including those to which Biltmore II laid claim. The court ultimately ruled in favor of Biltmore II, along the way holding that 3 Star never owned Biltmore II's pool of loans and thus committed fraud by "selling" them to SED. It also held the 3 Star-SED LSA void and unenforceable as to the Biltmore II loans. The wrinkle is that SED settled with Biltmore II before the court issued its decision; the parties agreed that Biltmore II held title to the contested loans but that they would divvy up the proceeds of the loans, once liquidated.

The Hyland Defendants urge that the Tarrant County suit precludes SED from bringing its claims against them here because SED previously "sought affirmative relief for each and every loan that is at issue in this case [and] SED's claims in Tarrant County were resolved by a final judgment—a judgment that SED agreed to." Applying the federal standard for *res judicata*, the district court concluded the defense "clearly does not apply." Under that test, a claim is barred by *res judicata* when: (1) the parties are identical in the two actions; (2) the first judgment was rendered by a court of competent jurisdiction; (3) there was a final judgment on the merits; and (4) the same claim or cause of action was involved in both cases. *Retractable Techs., Inc. v. Becton Dickinson & Co.*, 842 F.3d 883, 898 (5th Cir. 2016). The district court determined neither the first nor the fourth element was met.

The court used the wrong *res judicata* standard. Texas law, not federal law, applies when a federal court determines the preclusive effect of a Texas

judgment. *Basic Cap.*, 976 F.3d at 591.[6] And the Texas standard is articulated in a slightly different way, requiring: "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of the parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action." *Cox v. Nueces Cnty.*, 839 F.3d 418, 421 (5th Cir. 2016) (quoting *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996)). The Hyland Defendants assert that the district court erred by requiring them to show the parties were "identical" and the claims were the "same."[7] Under either the state or federal standard, a privity relationship may satisfy the identity requirement. *Ibid.*; *see also Bradley v. Armstrong Rubber Co.*, 130 F.3d 168, 179 (5th Cir. 1997) ("Parties in privity count as identical parties for federal *res judicata* purposes."). Under Texas law, the claims need not be the same so long as those brought in the second action are "based on" those in the first or "could have been raised" then. *Cox*, 839 F.3d at 421. Nevertheless, the district court did not err by rejecting the Hyland Defendants' preclusion argument. The Hyland Defendants cannot show that (1) they were in privity with 3 Star and (2) the claims here are based on the "same claims" as those that were or could have been raised in Tarrant County.

As to privity, the Hyland Defendants first contend SED should be bound by its multiple concessions that the Hyland Defendants were in privity with 3 Star. In the Harris County suit, SED asserted *res judicata* to preclude Biltmore and TM Property from relitigating the issues already decided in Tarrant County—that 3 Star had attempted to sell assets it did not own, and that the 3 Star-SED LSA was invalid. Thus, the Hyland Defendants say, SED

---

[6] *See also Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 381–83 (1985); *Matter of Miller*, 156 F.3d 598, 601 (5th Cir. 1998) (citing 28 U.S.C. § 1738).

[7] The parties do not dispute the first element.

already admitted that the Hyland Defendants were in privity with 3 Star and should be judicially estopped from changing its position. Judicial estoppel "protect[s] the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001) (cleaned up) (citations omitted). The doctrine is guided by several factors, including whether "a party's later position [is] 'clearly inconsistent' with its earlier position," "whether the party has succeeded in persuading a court to accept that party's earlier position," and whether absent estoppel "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party." *Id.* at 750–51 (citations omitted).

We conclude judicial estoppel does not apply. To begin with, the Harris County court never accepted SED's argument that Biltmore and TM Property were in privity with 3 Star. And the parties did not rely upon the premise that a privy relationship existed, nor did the Harris County court bar Biltmore and TM Property from proceeding as intervenors in that litigation.[8] Moreover, SED's position in the Tarrant County suit is not "clearly inconsistent" with its position here. *See Transclean Corp. v. Jiffy Lube Int'l, Inc.*, 474 F.3d 1298, 1307 (Fed. Cir. 2007) (judicial estoppel precludes a party from "revers[ing] course . . . late in the proceedings simply because it now realizes its litigation strategy was unsuccessful"). The two lawsuits involved

---

[8] This case is therefore distinguishable from *Transclean Corp. v. Jiffy Lube Int'l, Inc.*, 474 F.3d 1298 (Fed. Cir. 2007), on which the Hyland Defendants rely. There, the Federal Circuit invoked judicial estoppel to hold Transclean to its concession before the district court that its opponent was in privity with a nonparty against whom Transclean had obtained a judgment in an earlier lawsuit. The court decided to hold Transclean to its concession because to hold otherwise would have been "clearly inconsistent with the position [Transclean] advocated before the trial court," which "[t]he trial court accepted . . . and the defendants relied on . . . during both the trial and appellate phases of this litigation." *Id.* at 1307.

different parts of the 3 Star-SED transaction. The Tarrant County judgment centered on the Biltmore II loans, while the district court here focused on the Biltmore and TM Property loans—that is, the loans *not* at issue in the Tarrant County judgment. SED's "admissions" therefore do not prevent it from contesting privity here.

Nor have the Hyland Defendants shown that privity exists. "Texas courts have been clear that there is no categorical rule for privity; instead the courts look to 'the circumstances of each case.'" *EEOC v. Jefferson Dental Clinics, PA*, 478 F.3d 690, 694 (5th Cir. 2007) (quoting *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 800 (Tex. 1992)). "There are at least three ways in which parties can be in privity under Texas law: (1) 'they can control an action even if they are not parties to it; (2) their interests can be represented by a party to the action; or (3) they can be successors in interest, deriving their claims through a party to the prior action.'" *Id.* (quoting *Amstadt*, 919 S.W.2d at 653). The Hyland Defendants essentially contend that, throughout, SED and the court treated them and 3 Star as "functionally" the same because Mark Hyland controlled all of the Hyland Defendants and had some influence over 3 Star. But the principal Fifth Circuit case on which they rely, *Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1288 (5th Cir. 1989), involved parties who were related by vicarious liability to the party with whom they sought to establish privity. This relationship, we said, "form[ed] the only asserted basis" for privity, and "we ma[d]e no broad pronouncements about the doctrines of mutuality or privity in this circuit." *Id.* at 1289. So, we see no basis to conclude that Hyland's involvement in 3 Star's fraudulent dealings somehow created privity between 3 Star and the

other entities involved in the fraud.[9] Because they have not shown privity, *res judicata* does not apply. *Amstadt*, 919 S.W.2d at 652.

Moreover, the Hyland Defendants fail to show the second action was based on the "same claims as were raised or could have been raised in the first action." *Cox*, 839 F.3d at 421 (quotation omitted). Under Texas courts' transactional approach, "a judgment in an earlier suit 'precludes a second action by the parties and their privies not only on matters actually litigated, but also on causes of action . . . which arise out of the same subject matter and which might have been litigated in the first suit.'" *Harmon v. Dallas Cnty.*, 927 F.3d 884, 890 (5th Cir. 2019) (quoting *Getty Oil Co.*, 845 S.W.2d at 798). The Hyland Defendants contend that as an intervenor, SED could have raised its claims in the first suit. Yet *res judicata* does not bar a defendant in one action from later bringing a claim it was not required to bring previously. *Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 207 (Tex. 1999), *disagreed with on other grounds by In re J.B. Hunt Transp., Inc.*, 492 S.W.3d 287, 292 & n. 5 (Tex. 2016). This makes sense. *Res judicata* "ensure[s] that a

---

[9] Similarly, the Hyland Defendants argue their alleged status as co-conspirators establishes privity for *res judicata* purposes, but they point to no binding precedent to support this proposition. In the lone circuit-court case they cite, *Gambocz v. Yelencsics*, 468 F.2d 837, 840–42 (3d Cir. 1972), privity existed when defendants in the second suit were alleged coconspirators of those named in the first, "some of whom had been named in the original complaint as participating in the conspiracy but had not been named as parties defendant at that time." Even were we inclined to follow it, *Gambocz* is distinguishable. There, "the essential allegations of the second complaint parallel[led] those of the first" and "the relationship of the additional parties to the second complaint was so close to parties to the first that the second complaint was merely a repetition of the first." *Id.* at 842. But SED's suit against the Hyland Defendants is not "merely a repetition" of Biltmore II's suit against 3 Star, in which SED intervened, such that the second suit is a slight variation on the first. The Hyland Defendants have not shown that they "share [with 3 Star] an identity of interests in the basic legal right that is the subject of litigation," as is required to establish privity. *Amstadt*, 919 S.W.2d at 653. At most, 3 Star's interest in asserting ownership over the Biltmore II loans and the Hyland Defendants' interest in asserting they were not involved in any fraud are related but distinct.

No. 19-20841

defendant is not twice vexed for the same acts" and "achieve[s] judicial economy by precluding those who have had a fair trial from relitigating claims." *Amstadt*, 919 S.W.2d at 653. Those purposes are not served by penalizing a party for not bringing claims it was not required to bring.

Texas law does not require a defendant to assert a cross-claim against a co-defendant "simply because it arises from the same subject matter as [the] *plaintiff's* claim." *Getty Oil Co.*, 845 S.W.2d at 800 (emphasis added). "Where two parties are aligned in the first action and no issues are drawn between them, the judgment in that action does not preclude later claims between those parties." *Ibid.* SED intervened as a defendant aligned with 3 Star, in the sense that it did not assert a claim against its co-party. *See ibid.* It therefore is not barred from later bringing a claim against 3 Star (or its privies), "unless the claim was compulsory in the earlier action." *Ingersoll-Rand Co.*, 997 S.W.2d at 207. And cross-claims against co-parties are permissive under Texas law, not compulsory. Tex. R. Civ. P. 97(e). Because SED intervened as a defendant and did not assert a claim against its co-defendant, it was not required to assert its fraud claims as cross-claims, even if they arose from the same subject matter. *See Getty Oil Co.*, 845 S.W.2d at 800. In sum, *res judicata* does not bar SED's claims and the district court did not err by denying the Hyland Defendants' motion for JMOL on that basis.[10]

---

[10] Given our ruling on the *res judicata* issue, we reject the Hyland Defendants' related challenge to the court's excluding various exhibits, including the Biltmore II-SED settlement agreement. The Hyland Defendants contend the court erred because the exhibits were relevant to "a controlling issue in the case," that is, "whether res judicata bars SED's claims." Because the court correctly rejected the *res judicata* defense, however, the excluded exhibits could not have been relevant evidence and the court did not abuse its discretion in excluding them. Tex. R. Evid. 401, 402; *see Taylor-Travis v. Jackson State Univ.*, 984 F.3d 1107, 1114 (5th Cir. 2021), *cert. docketed*, 20-1715 (U.S. June 11, 2021).

### 2. Merits

Turning to the merits, we examine the Hyland Defendants' challenges to the denial of their JMOL and new trial motions. They argue the district court erred in denying their motions as to SED's conspiracy and fraudulent transfer claims. We review *de novo* denial of a JMOL motion, reversing only if the jury's factual findings are unsupported by substantial evidence or "the legal conclusions implied from the jury's verdict cannot in law be supported by those findings." *Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 614 (5th Cir. 2018) (citation omitted). We review denial of a new trial motion for abuse of discretion, *Jordan v. Maxfield & Oberton Holdings, L.L.C.*, 977 F.3d 412, 417 (5th Cir. 2020), which we will not find unless "there [was] an absolute absence of evidence to support the jury's verdict." *Williams*, 898 F.3d at 614 (citation omitted).

### a. Insufficiency of the Evidence: Fraudulent Transfer Claim

The Hyland Defendants maintain there was insufficient evidence to show they were responsible for fraudulent transfer under the Texas Uniform Fraudulent Transfer Act (TUFTA). *See* Tex. Bus. & Com. Code § 24.001 *et seq.* The verdict form asked the jury whether each Hyland Defendant "transfer[red] any of the assets listed below with actual intent to hinder, delay, or defraud SED." The "asset[] listed below" was "SED's payments to 3 Star, totaling $4,372,739." The jury marked "yes" as to each Hyland Defendant. On appeal, the Hyland Defendants argue the jury's conclusion was unfounded because SED failed to show the transferred money was not subject to a valid lien, which would preclude its recovery under TUFTA. We disagree.

Under TUFTA, a creditor may reclaim assets transferred "with actual intent to hinder, delay, or defraud any creditor of the debtor." Tex. Bus. & Com. Code § 24.005(a)(1). TUFTA "prevent[s] debtors from

defrauding creditors by placing assets beyond their reach." *Challenger Gaming Sols., Inc. v. Earp*, 402 S.W.3d 290, 293 (Tex. App.—Dallas 2013, no pet.). SED claimed the Hyland Defendants fraudulently transferred roughly $4 million from 3 Star, rendering it insolvent, in exchange for worthless loans. The jury agreed with SED. Now, the Hyland Defendants argue that TUFTA does not apply because the money did not constitute an "asset" within the meaning of the statute. An "asset" is "property of a debtor" excluding "property . . . encumbered by a valid lien," TEX. BUS. & COM. CODE § 24.002(2)(A), and a "valid lien" is "a lien that is effective against the holder of a judicial lien subsequently obtained . . . ," *id.* § 24.002(13). The Hyland Defendants argue TM Property's and Biltmore's sales of their loans to 3 Star created a security interest in the $4 million SED paid 3 Star. This "lien," they claim, meant that the money was not an "asset" and therefore that there was no fraudulent transfer. *See Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 341 (Tex. 2009) ("Without an asset, no fraudulent transfer can occur under the [T]UFTA.").

We disagree. A security interest that is "part of [a] fraudulent transfer of assets" is "voidable," that is, not a "valid lien" because it is not "effective against the holder of a judicial lien." *Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd.*, 80 S.W.3d 601, 609 (Tex. App.—Houston [1st Dist.] 2002, no pet.). TUFTA's definition of "transfer" includes the "creation of a lien," which means the creation of a lien may be a "fraudulent transfer." § 24.002(12). That is what happened here. Though the agreements made by TM Property and the Biltmore entities in combination with the LSA created a "lien" for those three entities in 3 Star's assets (the $4 million paid to it by SED), 3 Star was never entitled to that money because it was transferred in payment for loans 3 Star never owned. The security interests were therefore not valid liens but rather instruments of the fraudulent transfer. Accordingly,

the district court correctly denied the Hyland Defendants' renewed JMOL as to the fraudulent transfer claim.

### b. Insufficiency of the Evidence: Conspiracy Claim

The Hyland Defendants next dispute the sufficiency of the evidence to support the conspiracy judgment. Under Texas law, civil conspiracy is not an independent tort but rather a "'derivative'" one that "depends on some underlying tort or other illegal act." *Agar Corp. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 141–42 (Tex. 2019) (citations omitted). Civil conspiracy requires "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Id.* at 141 (citation omitted). The damages "come from the underlying act, not the conspiracy itself." *Id.* at 142. The Hyland Defendants rely on the principle that because conspiracy is a "derivative" tort, it "survives or fails alongside" the underlying tort. *Id.* at 141; *see also Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 931 (Tex. 2020). They contend there was insufficient evidence to support the underlying torts and, by extension, the conspiracy.

The court instructed the jury that it had already found 3 Star and Johnson liable for fraud and fraud by nondisclosure. Directly below this instruction on the verdict form was the question whether any of the defendants were "part of a conspiracy that caused the damages to SED Holdings." Accordingly, the Hyland Defendants reason that the tort underlying the conspiracy claim must have been either fraud or fraud by nondisclosure and that a judgment premised on either tort cannot stand because neither is supported by the evidence. We disagree.

As noted, the standard for reviewing the denial of a new trial is demanding: reversal requires "an absolute absence of evidence to support the jury's verdict." *Williams*, 898 F.3d at 614 (citation omitted). We review

verdict forms "'in the context of the instructions as a whole and the trial record,'" "evaluat[ing] the combined effect on the jury." *United States v. Fairley*, 880 F.3d 198, 208 (5th Cir. 2018) (citation omitted). In light of the entire charge, a jury could have understood the referenced "conspiracy" as encompassing any of the conduct related to the "fraud perpetrated against [SED] by 3 Star . . . and . . . Johnson." That includes SED's fraudulent transfer claim, which can serve as the underlying tort for conspiracy. *See Chu v. Hong*, 249 S.W.3d 441, 444 (Tex. 2008). The Hyland Defendants cannot show the "absolute absence of evidence" to support SED's conspiracy claim, *see Williams*, 898 F.3d at 614, when there is a valid verdict against them for fraudulent transfer, *see supra* Section 2(a). The district court properly denied their new trial motion as to the conspiracy claim.

### c. Jury Instructions

The Hyland Defendants' challenge to the jury instructions is twofold. They contend the district court abused its discretion, first, by rejecting their proposed instruction and verdict form language on the fraudulent transfer claim, and, second, by asking the jury to consider whether each defendant transferred the total amount ($4,372,739) rather than asking the jury to consider specific transfers. Neither argument is persuasive.

We "review challenges to jury instructions for abuse of discretion and afford the trial court great latitude in the framing and structure of jury instructions." *Young v. Bd. of Supervisors*, 927 F.3d 898, 904 (5th Cir. 2019) (citation omitted). "Verdict forms are considered part of the jury instruction," *Fairley*, 880 F.3d at 208, and we consider them "in light of the entire jury instruction," *Jones v. United States*, 527 U.S. 373, 393 (1999) (citation omitted). We ask not whether the court gave "every correct instruction offered by the parties," but rather whether it "correctly and adequately instruct[ed] the jury as to the law to be followed in deciding the

issues." *Alexander v. Conveyors & Dumpers, Inc.*, 731 F.2d 1221, 1227 (5th Cir. 1984) (per curiam). "[T]he party challenging the instruction must demonstrate that the charge as a whole creates substantial and ineradicable doubt whether the jury has been properly guided in its deliberations." *Young*, 927 F.3d at 904 (cleaned up) (citation omitted).

The district court did not commit reversible error in instructing the jury on the fraudulent transfer claim. Under TUFTA, a creditor may reclaim assets that the debtor transferred with fraudulent intent. TEX. BUS. & COM. CODE §§ 24.005(a)(1), 24.008(a)(1). TUFTA defines an "asset" as "property of a debtor" that is not "encumbered by a valid lien." § 24.002(2)(A). The jury was instructed that an "asset" means "property of a party." The Hyland Defendants objected to this definition as incomplete. Consistent with their argument that the transferred $4 million was not an "asset" under TUFTA because the funds were subject to Biltmore's and TM Property's security interests (which, they argue, were "valid liens"), they requested the court instruct the jury that "'asset' means property of the debtor, but the term does not include property that is encumbered by a valid lien." The court rejected the proposed instruction on the ground that a security interest is not a "valid lien" under TUFTA because it is not a "perfected judicial lien."[11]

---

[11] The relevant portion of the hearing transcript reads:

> [DEFENSE COUNSEL]: The term ["asset"] does not include "property that is encumbered by a valid lien."

> THE COURT: . . . [T]he security agreement . . . is not synonymous with a valid lien under the Texas Business and Commerce Code. They're not synonymous. Just because you have a security interest doesn't mean you have a perfected judicial lien. It's two completely different things. And I did not see any evidence of a perfected judicial lien.

TUFTA defines a "lien" not only as "a judicial lien obtained by legal or equitable process or proceedings," but also as "a security interest created by agreement." TEX. BUS. & COM. CODE § 24.002(8). The district court therefore erred by concluding that a "valid lien" under the statute must be a judicial lien, and its rejection of the Hyland Defendants' proposed instruction rested on this error and was therefore an abuse of discretion. *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 233 (5th Cir. 2016). Nevertheless, the error was harmless. As discussed, the evidence showed the security interests in the transferred funds were not "valid liens" as that term is statutorily defined. *See Tel. Equip. Network, Inc.*, 80 S.W.3d at 608–09 (security interest that is "part of [a] fraudulent transfer of assets" is not a "valid lien" because it is voidable and thus not "effective against the holder of a judicial lien"). No reasonable jury could have found the funds were subject to a "valid lien" and therefore not "assets" under TUFTA. Accordingly, the failure to give the requested instruction, although an abuse of discretion, was harmless. *Eastman Chem. Co. v. Plastipure, Inc.*, 775 F.3d 230, 240 (5th Cir. 2014).

The Hyland Defendants' next challenge also fails. They contend the jury was improperly asked whether each of the Hyland Defendants transferred the $4,372,739 with fraudulent intent, a question tying each defendant to the entire amount rather than asking the jury to evaluate specific transfers. In their view, insufficient evidence supported a finding that "*each* Hyland Defendant fraudulently transferred or received $4,372,739" because such a finding would require SED to prove that each "had legal dominion and control over every single dollar of those transfers." *See Newsome v. Charter Bank Colonial*, 940 S.W.2d 157, 165–66 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (defining transferee under TUFTA as "a party who has legal dominion or control over the funds").

No. 19-20841

The Hyland Defendants' proposed instructions tracked their theory of the case—that each transferred or received (at most) certain transfers from the escrow account. But SED's theory was different: it was not that these defendants were responsible only for the transfers each received from the escrow account, but instead that "the transfer of SED's $4,000,000 by Dykes . . . [from the escrow fund] to [Mark] Hyland's affiliates" was fraudulent. In other words, SED claimed the Hyland Defendants not only received the funds but also exercised "dominion and control" over the escrow account. This was the claim submitted to the jury, and the evidence supported its finding. It showed that 3 Star was a shell company and that Hyland controlled the details of the LSA and subsequent transactions, purported to represent Biltmore and TM Property, and directed the distribution of money from the escrow account. In light of this evidence, the district court did not abuse its discretion by declining to ask the jury whether subsequent transfers *out* of the escrow account were fraudulent, when those transfers were not at issue. It was appropriate to ask the jury to determine whether the transfer of $4,372,739 *into* the account was fraudulent, since that was the basis of SED's claims. *See Alexander*, 731 F.2d at 1226–27 ("Given the evidence presented at trial, the jury instruction was proper.").[12]

---

[12] The Hyland Defendants also submit that the court's equitable subordination judgment and its judgments against 3 Star and Johnson should be reversed. We need not address those arguments because they depend on our reversing some part of the judgment against the Hyland Defendants, which we decline to do. To the extent the Hyland Defendants challenge the equitable subordination judgment independent of their other challenges to the judgment, that argument is waived for inadequate briefing. *Roy v. City of Monroe*, 950 F.3d 245, 251 (5th Cir. 2020) ("Failure adequately to brief an issue on appeal constitutes waiver of that argument." (citation omitted)).

### d. Excessiveness of the Verdict

The Hyland Defendants next challenge the jury award of $10.68 million in compensatory damages and, correspondingly, the court's denial of their motions for JMOL and new trial on that basis. They assert that amount is excessive, disproportionate to SED's injuries, and motivated by "passion or prejudice." We review the denial of new trial or remittitur for abuse of discretion. *Thomas v. Tex. Dep't of Crim. Just.*, 297 F.3d 361, 368 (5th Cir. 2002). Although only "the strongest of showings" will justify overturning or reducing a jury's damages award for excessiveness, *GlobeRanger Corp. v. Software AG United States of America, Inc.*, 836 F.3d 477, 500 (5th Cir. 2016) (citation omitted), the Hyland Defendants have made that showing here.

Responding to the question of what sum would compensate SED for the actual damages it incurred, the jury answered: "$10,650,000." In its post-trial response to the Hyland Defendants' motion for new trial, SED argued the amount was supported by:

| $4,372,739 | Amount SED paid in for the loans |
|---|---|
| $4,000,000 | Amount SED expected in return on its investment |
| $307,000 | Amount SED expended in other costs associated with LSA |
| $2,000,000 | SED's tranche payment |
| $10,679,739 | Total |

These numbers correspond to the amount SED's counsel requested from the jury in closing arguments: $10,679,739.

Three errors render the award excessive. First, the approximately $10.68 million total appears to be the result of double-counting. SED sought to recover the approximately $4 million it paid into the escrow accounts as an initial payment for the loans. The second $2 million tranche was part of that $4 million. SED does not offer an alternate source for the $2 million included in the total award, and indeed acknowledges that if the reward is

reduced, it is appropriate to subtract "the $2 million that the Hyland Group contends is counted twice." Remittitur is warranted "only if some portion is so factually insufficient or so against the great weight and preponderance of the evidence as to be manifestly unjust," *Pope v. Moore*, 711 S.W.3d 622, 624 (Tex. 1986). However, "[a] party is not entitled to a double recovery," *Waite Hill Servs., Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184 (Tex. 1998), and SED has offered no other explanation for the amount. The award therefore "exceeds the bounds of any reasonable recovery" with respect to that $2 million. *GlobeRanger*, 836 F.3d at 500 (citation omitted).

Second, the award unreasonably included $4 million in lost profits. In Texas, "[r]ecovery for lost profits does not require that the loss be susceptible of exact calculation," but the injured party must show "the amount of the loss . . . by competent evidence with reasonable certainty." *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992). The only evidence SED identifies to show an anticipated $4 million profit is the testimony of its president, Chris Edens. But "[a] party's bare assertion" of a loss "does not establish lost profits with reasonable certainty." *Horizon Health Corp. v. Acadia Healthcare Co., Inc.*, 520 S.W.3d 848, 860 (Tex. 2017). Rather, "[a]s a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained." *Heine*, 835 S.W.2d at 84. SED points to no objective evidence to support the figure. Edens's "testimony is legally insufficient because it does not provide any indication of how [Edens] determined what the[] lost profits were." *Id.* Therefore the award of $4 million for lost profits also "exceeds the bounds of any reasonable recovery." *See GlobeRanger*, 836 F.3d at 500; *Pope*, 711 S.W.2d at 624.

Third, the award compensated SED for its losses related to all three pools of loans it purportedly purchased from 3 Star. But SED had already recovered part of its losses when it settled with Biltmore II in Tarrant County

and received $551,578.17 from the sale of those loans. The Biltmore II-SED settlement was not admitted into evidence and thus could not have factored into the jury's decision. However, during trial, the court assured the parties it would not permit SED to "double dip" on that amount. Nonetheless, the court did not offset the jury award accordingly. The Hyland Defendants raised the issue of double recovery in their renewed motions for JMOL and new trial, thereby preserving it for review. *See Jang Won Cho v. Kun Sik Kim*, 572 S.W.3d 783, 805 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

Remittitur in the amount of the Biltmore II-SED settlement is appropriate. The district court's exercise of discretion in denying a motion for new trial or remittitur "can be set aside only upon a clear showing of abuse." *Eiland v. Westinghouse Elec. Corp.*, 58 F.3d 176, 183 (5th Cir. 1995). "However, when this court is left with the perception that the verdict is clearly excessive, deference must be abandoned." *Id.* The court's denial of remittitur allowed SED to recover twice for the damages related to the Biltmore II pool of loans, and again, SED concedes as much. It is undisputed that SED received $551,578.17 from settling with Biltmore II and that the $4 million SED paid to 3 Star was an initial payment for all of the loans 3 Star purported to sell—including the Biltmore II loans. The award was therefore "contrary to right reason" because it included a double recovery. *See Consol. Cos., Inc. v. Lexington Ins. Co.*, 616 F.3d 422, 435 (5th Cir. 2020) (citation omitted).

Because the "defects in the award are readily identifiable and measurable," remittitur ordinarily would be appropriate. *Brunnemann v. Terra Int'l, Inc.*, 975 F.2d 175, 179 (5th Cir. 1992). However, it is unclear whether other settlements may need to be taken into account. For instance, SED reached a $425,000 settlement agreement with Dykes and concedes the Hyland Defendants are entitled to a credit in that amount. Remand is therefore appropriate so that the judgment may be calculated with precision.

We instruct the district court, however, to subtract at least the following three identifiable amounts from the jury award: (1) the double-counted $2 million; (2) the $4 million in lost profits; and (3) the $551,578.17 already recovered from the Biltmore II settlement (in total, $6,551,578.17).

## B. Home Servicing's Claims

### 1. Appeal of the Denial of New Trial

Home Servicing also moved for a new trial and now appeals the district court's denial of that motion. We review for abuse of discretion, *Jordan*, 977 F.3d at 417, and will reverse "only when there is an absolute absence of evidence to support the jury's verdict." *Williams*, 898 F.3d at 614 (citation omitted). When reviewing a jury's conclusions, "we are bound to view the evidence and all reasonable inferences in the light most favorable to the jury's determination." *Rideau v. Parkem Indus. Servs., Inc.*, 917 F.2d 892, 897 (5th Cir. 1990). "We are especially deferential to jury verdicts," *Shell Offshore, Inc. v. Tesla Offshore, L.L.C.*, 905 F3d 915, 923 (5th Cir. 2018) (cleaned up), and interpret them "most favorabl[y] to upholding the jury's decision by a finding of consistency." *Merritt Hawkins & Assocs., L.L.C. v. Gresham*, 861 F.3d 143, 154 (5th Cir. 2017) (cleaned up).

The jury found for SED on its claim that Home Servicing breached "the Servicing Agreement." But that cannot be, says Home Servicing, because the agreement to service the loans—the RSSA—was between Home Servicing and TM Property Solutions, not SED. So, Home Servicing urges, SED cannot recover for breach of a contract it was not party to. This argument is couched in terms of estoppel; Home Servicing asserts that SED has always maintained it was never party to the RSSA and cannot now change its tune. We agree with Home Servicing.

SED had good reason to argue it was not party to the RSSA: that written agreement contained a jury waiver. SED contends it is not bound by

the waiver, however, because it sued Home Servicing for breaching a separate agreement between SED and Home Servicing that Home Servicing would service the loans. Some testimony suggested that such an agreement existed. Witnesses for both sides stated the two parties had a "verbal agreement" that Home Servicing would service the loans. But the jury was not asked whether Home Servicing breached some nebulous oral agreement. It was asked whether "Home Servicing breach[ed] the Servicing Agreement with SED Holdings." And the jury charge identified the "Servicing Agreement" to which it referred: "the existing agreement to service SED Holding's (sic) loans under the contract between Home Servicing and TM Property Solutions." Even if that instruction can plausibly be read another way—namely, to refer to an "existing agreement" between Home Servicing and SED requiring Home Servicing to service the loans *as it had done* under the RSSA—SED has not explained why it should be permitted to hold Home Servicing to the terms of the RSSA without itself being bound.

Because no evidence supports the jury's conclusion that Home Servicing breached "the Servicing Agreement with SED Holdings," a new trial is warranted. We therefore vacate the judgment as to SED's breach of contract claim against Home Servicing and remand for a new trial.[13]

## C. SED's Cross Appeal Against Nations Law Firm

Finally, we review *de novo* SED's cross-appeal challenging the district court's grant of summary judgment in favor of Nations. *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020).[14] Summary judgment is proper if "there is no

---

[13] We therefore need not reach Home Servicing's additional arguments challenging various evidentiary rulings by the district court.

[14] SED also argues on cross-appeal that the district court improperly dismissed its conspiracy claims against Home Servicing and St. John. However, we need not address

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute exists when, construing "all facts and reasonable inferences . . . in favor of the nonmovant," "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Renfroe*, 974 F.3d at 599 (citation omitted).

SED asserted claims against Nations based on various alleged misdeeds perpetrated by Dykes, the escrow agent for the funds SED paid to 3 Star pursuant to the LSA. The district court granted summary judgment for Nations, reasoning that SED failed to establish Nations' vicarious liability for Dykes's actions. On appeal, SED presses its argument that Nations is liable under an apparent liability theory.

A principal may be liable under the doctrine of apparent authority if it "knowingly permit[s] an agent to hold himself out as having authority or . . . [takes] actions which lack such ordinary care as to clothe an agent with the indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority he purports to exercise." *Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007) (citation omitted) (cleaned up). To show Nations was liable under an apparent authority theory, SED must establish: (1) "a reasonable belief in the agent's authority"; (2) "generated by some holding out or neglect of the principal"; and (3) "justifiable reliance on the authority." *2616 S. Loop L.L.C. v. Health Source Home Care, Inc.*, 201 S.W.3d 349, 356 (Tex. App.—Houston [14th Dist.] 2006, no pet.)). Here, the second element is dispositive: "The principal must have affirmatively held out the agent as possessing the authority or must have knowingly and voluntarily

---

those claims because they are contingent on our reversing the judgment against Home Servicing, which we decline to do.

permitted the agent to act in an unauthorized manner." *NationsBank, N.A. v. Dilling*, 922 S.W.2d 950, 953 (Tex. 1996). Even assuming SED reasonably believed and justifiably relied on the perception that Dykes acted under the law firm's auspices, it has not shown a material factual dispute that Nations, through some act or omission, led SED to believe Dykes acted as its agent.

SED contends that Nations "knowingly permitted Dykes to hold himself out as Nations' agent or employee" because Nations held out Dykes as a lawyer working for the firm and allowed him to engage in his own escrow practice while working out of its offices and using its equipment, email, and letterhead. Despite its knowledge of Dykes's outside practice, SED asserts, Nations never forbade him from "indiscriminately hold[ing] himself out as a Nations lawyer." Yet "apparent authority is limited to the scope of responsibility that is apparently authorized." *First Valley Bank of Los Fresnos v. Martin*, 144 S.W.3d 466, 471 (Tex. 2004). That Nations knew Dykes held himself out as a Nations lawyer generally does not "clothe [Dykes] with the indicia of authority" as to any work he performed. *See Gaines*, 235 S.W.3d at 182. "The relevant issue is not merely the existence of an agency relationship, but rather the scope of that agency." *Amerigroup Texas, Inc. v. True View Surgery Ctr., L.P.*, 490 S.W.3d 562, 566 (Tex. Ct. of App.—Houston [14th Dist.] 2016, no pet.). "The principal's full knowledge of all material facts is essential to establish a claim of apparent authority." *Id.* Though SED maintains that Nations had "complete knowledge of Dykes' escrow practice," it has established only that Nations knew Dykes was engaged in some outside work from his Nations office, not that it knew he was engaged in escrow work or that he held himself out as Nations' agent in his relationship with SED and 3 Star. Thus, SED has not shown a fact dispute

as to Nations' "full knowledge of all material facts"[15] and the district court did not err by granting summary judgment to Nations.

### III. Conclusion

We AFFIRM the district court's liability judgment as to the Hyland Defendants in all respects except the damages award.[16] We REMAND for REMITTITUR of that award consistent with this opinion. We VACATE the judgment against Home Servicing and REMAND for a new trial on the breach of contract claim.

---

[15] *See Neubaum v. Buck Glove Co.*, 302 S.W.3d 912, 919 (Tex. App.—Beaumont 2009, pet. denied) (principal's knowledge that purported agent held himself out as such in one matter did not prove principal knew of unrelated instance of similar conduct).

[16] The Hyland Defendants urge us to reverse the judgment against 3 Star and Johnson, who are not parties to this appeal. We may alter a judgment in favor of a non-appealing party only under circumstances not present here. *See Cooper v. Tex. Alcoholic Beverage Comm'n*, 820 F.3d 730, 739 (5th Cir. 2016). We therefore decline to do so.