**REVISED July 9, 2019**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

June 21, 2019

Lyle W. Cayce
Clerk

No. 18-10353

NORVIS HARMON,

> Plaintiff - Appellant

v.

DALLAS COUNTY, TEXAS; DERICK EVANS,

> Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas

Before REAVLEY, ELROD, and WILLETT, Circuit Judges.

PER CURIAM:

This case is about an employment relationship that did not turn out well. Norvis Harmon, a former deputy constable, brought this action under 42 U.S.C. § 1983 against Dallas County and then-Constable Derick Evans. He alleges the defendants violated his First Amendment rights when he was terminated for reporting the illegal acts of Evans and others to law-enforcement authorities. Harmon additionally alleges the defendants denied him equal protection of the law in refusing to hear his grievance.

No. 18-10353

This is Harmon's second lawsuit based on these facts, as he previously filed a state-court lawsuit against Dallas County aggrieving the circumstances of his termination. He did not enjoy a favorable judgment in that suit.

The district court below disposed of Harmon's claims through a series of summary-judgment and 12(c) rulings.[1] The district court dismissed Harmon's claims against Dallas County as barred by res judicata,[2] and dismissed Harmon's claims against Evans in his individual capacity on the basis of qualified immunity.[3] For the reasons stated herein, we AFFIRM.

I.

Harmon is a former deputy constable in Precinct 1 of the Dallas County Constable's Office. During his employment, Harmon became aware that Evans and his other superiors were up to some not-so-good things, to wit: (1) requiring deputies to work for Evans's political allies without pay; (2) requiring deputies to donate time and money to Evans's re-election campaign; (3) illegally setting quotas for writing traffic citations; and (4) requiring deputies to tow citizens' vehicles after traffic stops, and to do so with a certain towing company with whom Evans shared a close relationship.

In November 2009, Harmon reported these activities to Defenbaugh & Associates, an investigative firm hired by the Dallas County Commissioner's Court. Harmon alleges he made similar reports to the Dallas County Human Resources Department, the Dallas County District Attorney, and the Federal Bureau of Investigation.

---

[1] *See generally Harmon v. Dall. Cty., Tex.* (*Harmon II*), 294 F. Supp. 3d 548 (N.D. Tex. 2018); *Harmon v. Dall. Cty., Tex.*, No. 3:13-CV-2083-L, 2017 WL 3394724 (N.D. Tex. Aug. 8, 2017) (denying Harmon's motion to recuse); *Harmon v. Dall. Cty., Tex.* (*Harmon I*), 248 F. Supp. 3d 814 (N.D. Tex. 2017).

[2] *Harmon I*, 248 F. Supp. 3d at 822.

[3] *Id.* at 823–24; *Harmon II*, 294 F. Supp. 3d at 576.

No. 18-10353

Things then went downhill. Word spread that certain deputies were speaking out, prompting Evans to call a meeting in which he made couched threats that he would retaliate against those who did. In March 2010, the Dallas Morning News published an article describing the results of the investigation and confirmed that certain deputies had spoken out against Evans's illegal activities.[4] Although the article did not identify any of the deputies by name, a separate investigative report did.[5]

Evans later initiated an administrative investigation into Harmon and, finding at least one discrepancy in Harmon's GPS reports, terminated him (from employment) on June 3, 2011. Harmon tried to grieve his termination to Evans, as his department head, and to Dallas County. These attempts were not successful, because deputy constables hired after August 19, 2003 are excluded from the Dallas County Civil Service Commission's grievance system procedure.[6] As Harmon was hired in 2008, he did not have grievance rights. So, Harmon turned to litigation.

Harmon first sued Dallas County in Texas state court. He asserted claims for alleged violations of the Texas Whistleblower Act and Texas Government Code § 617.005,[7] and an equal protection violation under the

---

[4] Kevin Krause & Ed Timms, *Report: Dallas County Constable Derick Evans May Have Broken Law With Re-election Raffles, Not Paying Deputies For Off-duty Work*, DALLASNEWS (March 2010), https://www.dallasnews.com/news/crime/2010/03/04/Report-Dallas-County-Constable-Derick-9350.

[5] Evans was eventually convicted for engaging in organized criminal activity. The conviction was affirmed on appeal. *Evans v. State*, No. 05-12-01179-CR, 2014 WL 1415093, at *1 (Tex. App.—Dallas Mar. 28, 2014, pet. ref'd).

[6] *See* DALLAS CTY., TEX., CODE OF ORDINANCES ch. 86, art. I, § 86.1(1) ("*Category A employee* includes . . . deputy constables hired after August 19, 2003 . . . . [C]ategory A classified employees are excluded from coverage afforded in employment procedures relating to job posting, reduction-in-force, double-fill, reinstatement, reemployment, dismissals, right of appeal, and grievance system procedures of this Code.").

[7] TEX. GOV'T CODE § 617.005 ("This chapter does not impair the right of public employees to present grievances concerning their wages, hours of employment, or conditions

No. 18-10353

Texas Constitution. In addition, Harmon sought injunctive relief and declaratory relief in connection with his equal protection claim, and a declaration that Evans's actions were "illegal and void." Evans was not a party to the state-court action.

The County moved to dismiss Harmon's suit for lack of subject-matter jurisdiction, arguing that governmental immunity barred Harmon's constitutional claims, as well as those brought under the Whistleblower Act and Local Government Code. The County also argued that Harmon's requests for injunctive and declaratory relief embraced ultra vires acts that could only be asserted against Evans, who was not a party to the suit. The court agreed with the County, dismissed Harmon's claims with prejudice, and granted Harmon the opportunity to replead his claims for declaratory and injunctive relief. Harmon did not, and the state court eventually entered final judgment disposing of all claims and parties on November 7, 2013.

Harmon brought his second suit in federal court, asserting two claims under § 1983: (1) a retaliation claim under the First Amendment, and (2) an equal protection claim based on the denial of his right to petition the government. In addition to suing the County (again), Harmon also sued Evans in both his individual and official capacities. Evans asserted the defense of qualified immunity, so the district court ordered Harmon to file a Rule 7(a) reply. Afterwards, Evans filed a Rule 12(c) motion for judgment on the pleadings based on his qualified-immunity defense, and both defendants later filed a limited motion for summary judgment asserting that res judicata barred Harmon's federal suit.[8]

of work either individually or through a representative that does not claim the right to strike.").

[8] We have simplified the motion practice before the district court.

4

No. 18-10353

The district court held that res judicata barred Harmon's suit as to the County and Evans in his official capacity, and then granted Evans's Rule 12(c) motion on the basis of qualified immunity as to Harmon's First Amendment retaliation claim.[9] Harmon, however—and to the apparent surprise of the district court and the parties—argued that he still had lingering claims under the First Amendment's Petition Clause. The district court granted Evans the opportunity to file a dispositive motion on those claims,[10] and then granted his motion when he did.[11] Harmon timely appealed.

## II.

Harmon brings three issues on appeal. He first argues that res judicata does not apply to this case. Next, he argues the district court erred in granting Evans qualified immunity on his First Amendment retaliation claim because his right to engage in the speech at issue was clearly established at the time of his termination. Finally, Harmon contends the district court was wrong to grant Evans qualified immunity on his claims under the First Amendment's Petition Clause. We address each in turn.

## III.

We apply Texas law to determine the res judicata effect of a Texas judgment, and our review is de novo. *Sims v. City of Madisonville*, 894 F.3d 632, 644 (5th Cir. 2018); *Cox. v. Nueces Cty., Tex.*, 839 F.3d 418, 420–21 (5th Cir. 2016). Under Texas law, res judicata requires "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or

---

[9] *Harmon I*, 248 F. Supp. 3d at 818 n.5, 825.

[10] *Id.* at 825 ("The court is, therefore, dismayed with Plaintiff's recent assertion regarding a 'First Amendment Petition Claim,' as this litigation that has been pending four years. Out of fairness to Evans, the court will allow him to file a dispositive motion regarding this claim by April 28, 2017.").

[11] *Harmon II*, 294 F. Supp. 3d at 576 (granting Evans's summary-judgment motion on the basis of qualified immunity).

5

those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996). Applying these principles, we conclude that res judicata bars Harmon's claims against the County and Evans in his official capacity, but not as to Evans in his individual capacity.

The first element is met because, under Texas law, a dismissal based on governmental immunity constitutes a final judgment on the merits for purposes of res judicata. *See Sims v. City of Madisonville*, 894 F.3d 632, 644 (5th Cir. 2018) ("We have held that, under Texas law, a grant of a plea to the jurisdiction is a dismissal on the merits for purpose of res judicata."); *Klein v. Walker*, 708 F. App'x. 158, 160 (5th Cir. 2017) (unpublished) ("[A] dismissal on immunity grounds under Texas law is a dismissal on the merits for purposes of res judicata."). As mentioned, the state court dismissed Harmon's claims with prejudice based on the County's assertion that it was entitled to governmental immunity and later entered a final judgment disposing of all claims and parties. This element is met.

The third element presents an easy solve under Texas's "transactional" approach. "Under this approach, a judgment in an earlier suit 'precludes a second action by the parties and their privies not only on matters actually litigated, but also on causes of action or defenses which arise out of the same subject matter and which might have been litigated in the first suit.'" *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 798 (Tex. 1992) (citation omitted). In this case, both of Harmon's suits arise from the same operative facts and subject matter—Harmon's allegedly unlawful termination and his inability to file a grievance. *See Sims*, 894 F.3d at 645. And, as the district court observed, nothing prevented Harmon from bringing his federal claims in state court. *See id.* We conclude this element is also met.

No. 18-10353

Stepping back, the second element—privity—presents a closer question, but our decision in *Warnock v. Pecos County, Texas*, 116 F.3d 776 (5th Cir. 1997) supplies the answer.[12] *Warnock* stands for the basic proposition that privity does not exist between a governmental entity and an employee later sued in his or her individual capacity. *See id.* at 778. The plaintiff in *Warnock* alleged that two state district court judges retaliated against her for whistleblowing. Although her initial state-court suit against the county was unsuccessful, the plaintiff later filed suit in federal court against the county and the judges in their official and individual capacities. *Id.* at 777. The district court concluded that res judicata barred suit against the judges in both capacities, but we disagreed, holding that privity was lacking "between the county and judges in their individual capacities." *Id.* at 778. We cited to *Conner v. Reinhard* for support, in which the Seventh Circuit explained that "a city official sued in his official capacity is generally in privity with the municipality," but that "[a] government official sued in his personal capacity, however, presents a different case." 847 F.2d 384, 394–95 (7th Cir. 1988). The reasons for drawing this distinction are legion:

> If the plaintiff prevails against the official, the official must satisfy the judgment out of his own pocket, rather than having the government entity pay the damages. *See Kentucky v. Graham,* 473 U.S. 159, 166, 105 S. Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). In addition, different legal theories may be necessary to prove liability in a personal-capacity, as opposed to an official-capacity, case. Also, different defenses are available to a defendant who is sued in his personal capacity. Therefore, courts do not generally consider an official sued in his personal capacity as being in privity with the government.

---

[12] There is no question this element is satisfied as to the County, as it was a party in the prior suit.

7

*Id.* at 395 (some citations omitted); *see* 18A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4458 (3d ed. 1998) ("The relationships between a government and its officials justify preclusion only as to litigation undertaken in an official capacity.").[13] To that end, district courts in this circuit have applied *Warnock* to circumstances analogous to those at hand. *See Benson v. City of Texas City, Tex.*, No. 3:13-CV-23, 2014 WL 948901, at \*4 (S.D. Tex. Mar. 11, 2014) (Costa, J.) ("The defendants argue that the Court should look 'pragmatically' at the privity issue by deciding whether the parties are 'sufficiently close.' But *Warnock* makes clear that defendants sued in their individual capacities are not 'sufficiently close' to their public employers for the logical reason that they both have different defenses."). Thus, res judicata does not bar Harmon's individual-capacity claims against Evans.

But we agree with the district court that res judicata bars any official-capacity claims against Evans. An official-capacity claim, after all, is essentially a claim against the County. *See Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 485 (5th Cir. 2000) (observing that when "a defendant government official is sued in his individual and official capacity, and the city or state is also sued," the "official-capacity claims and the claims against the governmental entity essentially merge"); *Olibas v. Dodson*, 593 F. App'x 412, 413 (5th Cir. 2015) (unpublished) ("[I]t is well-settled that claims against a municipal official in his official capacity are claims against the county. . . . Therefore, we need not consider the County separate from the Sheriff in his official capacity." (citation omitted)); *Lewis v. Pugh*, 289 F. App'x 767, 771 (5th Cir. 2008) (unpublished). Thus, because res judicata bars

---

[13] *See also McLellan v. Perry*, 672 F. App'x 690, 691 (9th Cir. 2016) ("[P]rivity exists between the agency and Defendant Wright, who is sued in his official capacity; but privity does not exist between the agency and the other three Defendants, who are sued in their individual capacities."); *Headley v. Bacon*, 828 F.2d 1272, 1279 (8th Cir. 1987) ("[A] judgment against a government does not bind its officials sued in their personal capacities.").

No. 18-10353

Harmon's claims against the County, it also bars Harmon's official-capacity claims against Evans. However, because res judicata does not bar Harmon's individual-capacity claims, we proceed, as did the district court, to the merits.

IV.

Harmon alleges he was terminated in retaliation for engaging in protected speech under the First Amendment. Evans, in a Rule 12(c) motion, asserted the defense of qualified immunity. After ordering supplemental briefing on this point, the district court held that the law regarding Harmon's speech was not clearly established at the time of his termination and thus Evans was entitled to qualified immunity on Harmon's retaliation claim.[14]

We review de novo a district court's ruling on a Rule 12(c) motion for judgment on the pleadings asserting qualified immunity. *Johnson v. Halstead*, 916 F.3d. 410, 416 (5th Cir. 2019). "A 'plausibility' standard determines whether the plaintiff has pled sufficient facts to defeat a motion to dismiss." *Id.* (citation omitted). "When the defendant asserts qualified immunity, the court can order the plaintiff to submit a reply, refuting the immunity claim 'with factual detail and particularity.'" *Id.* The plaintiff's reply "'must be tailored to the assertion of qualified immunity and fairly engage its

---

[14] This case was originally before then-Chief Judge Solis, who denied Evans's qualified-immunity defense. *Harmon v. Dall. Cty.*, No. 3:13-CV-2083-P, 2015 WL 13672837, at *4 (N.D. Tex. Dec. 1, 2015) ("The Court is convinced that every reasonable official would have understood such retaliation to be in violation of Harmon's statutory or constitutional rights."). After Judge Solis retired, the case was reassigned to Judge Lindsay, who *sua sponte* revisited this issue. Judge Lindsay vacated that prior order, concluding that the law regarding Harmon's speech was not clearly established at the time of his termination. Because the denial of qualified immunity is an interlocutory order, the court was free to revisit and request further briefing on that issue. *See Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990) ("[B]ecause the denial of a motion for summary judgment is an interlocutory order, the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law."), *abrogated on other grounds, Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994).

allegations.'" *Id.* (quoting *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995)).

"To evaluate whether a government official is entitled to qualified immunity, we conduct a two-prong inquiry: we ask (1) whether the undisputed facts and the disputed facts, accepting the plaintiffs' version of the disputed facts as true, constitute a violation of a constitutional right, and (2) whether the defendant's conduct was objectively reasonable in light of clearly established law." *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015) (quoting *Thompson v. Upshur Cty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001)). "We have discretion to address either prong first without necessarily addressing the other." *Id.*

To establish a claim for retaliation under the First Amendment, a plaintiff must show, *inter alia*, that he "spoke as a citizen on a matter of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006); *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016). Although reporting municipal corruption undoubtedly constitutes speech on a matter of public concern,[15] *Garcetti* instructs to "first decide whether the plaintiff was speaking as a citizen disassociated with his public duties, or whether the plaintiff was speaking in furtherance of the duties of his or her public employment." *Howell v. Town of Ball*, 827 F.3d 515, 522–23 (5th Cir. 2016). When public employees engage in speech pursuant to their official duties, they "are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421. In 2014,

---

[15] *See Lane v. Franks*, 573 U.S. 228, 241 (2014) ("The content of Lane's testimony— corruption in a public program and misuse of state funds—obviously involves a matter of significant public concern."); *Garcetti*, 547 U.S. at 425 ("Exposing governmental inefficiency and misconduct is a matter of considerable significance."); *Markos v. City of Atlanta, Tex.*, 364 F.3d 567, 574 (5th Cir. 2004) ("In this case, we have a public employee speaking out about alleged corruption in the police department, a subject undoubtedly of public concern.").

No. 18-10353

the Supreme Court emphasized that "[t]he critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane*, 573 U.S. at 240.

We applied these principles in *Howell v. Town of Ball*, which we find controlling. In *Howell*, we held that a Louisiana police officer's confidential involvement with an FBI-led investigation into the illegal acts of the mayor and other local officials was not "in furtherance of his ordinary job duties." 827 F.3d at 524. Although we agreed the police officer's First Amendment rights were violated when he was terminated in retaliation for cooperating with the FBI's investigation, we ultimately concluded the defendants were entitled to qualified immunity because, at the time of the officer's termination, "it was not clearly established whether his involvement in the FBI investigation was protected under the First Amendment." *Id.* at 525. We explained that:

> At the time that Howell was fired, *Garcetti*'s distinction between speech made pursuant to official duties and speech made as a private citizen was relatively new, and this court had not considered it in the context of an action involving a police officer's statements to an outside law enforcement agency, or in the context of a law enforcement officer's assistance with an outside agency's investigation. *Garcetti*, by its own admission, did not "articulate a comprehensive framework for defining the scope of an employee's duties in cases where there is room for serious debate." *See* 547 U.S. at 424, 126 S. Ct. 1951. Furthermore, the Supreme Court did not emphasize that only speech made in furtherance of an employee's "ordinary" job duties is not protected until nearly three years after Howell was discharged.
>
> The lack of the application of *Garcetti* to similar facts at the time of Howell's discharge, coupled with the Supreme Court's only recent clarification of *Garcetti*'s citizen/employee distinction in *Lane*, compels us to hold that the Board defendants did not violate a "clearly established" constitutional right when voting to fire Howell. We thus affirm the district court's grant of qualified immunity to the Board defendants.

No. 18-10353

*Id.* 525–26 (some internal citations omitted).

The parties here essentially agree that Harmon alleges a violation of his First Amendment rights; indeed, Evans concedes—ultimately to his advantage, of course—that "the facts in *Howell* are identical to the speech at issue in this case." And Harmon alleges that it was not part of his ordinary duties as a deputy constable to report the illegal acts of his supervisors to investigators, the FBI, and other authorities. Even so, Harmon's termination occurred just one month prior to the officer's termination in *Howell*, where we held that it was not clearly established whether a law enforcement officer's involvement in an investigation with outside law-enforcement enjoyed protection under the First Amendment. Accordingly, the same result in *Howell* must obtain here.[16] We thus agree with the district court that Evans is entitled to qualified immunity on Harmon's First Amendment retaliation claim.

V.

Finally, we address Harmon's claims under the First Amendment's Petition Clause, which "protects 'the right of the people . . . to petition the Government for a redress of grievances.'" *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 382 (2011) (quoting U.S. CONST. AMEND I.).

---

[16] Harmon directs us to *Cutler v. Stephen F. Austin State University* in support of his argument that the law regarding his speech was clearly protected at the time of his termination. 767 F.3d 462, 472 (5th Cir. 2014) ("Several pre–2010 decisions have, however, given the Defendants the 'fair warning' they need."). However, whether the law was clearly-established at the time of Harmon's termination requires us to consider the specific context of the case. *See Anderson v. Valdez*, 913 F.3d 472, 476 (5th Cir. 2019) ("[W]e are 'not to define clearly established law at a high level of generality,' but rather are to pay close attention to 'the specific context of the case.'" (citation omitted)). *Cutler* did not involve a law-enforcement officer's reporting the illegal acts of his superior to outside law-enforcement authorities, so we follow *Howell*.

As best we can tell, Harmon attempts to bring two "petition" claims.[17] The first appears to be a straight-up petition claim based on Evans's refusal to hear his grievance; that is, Harmon alleges that Evans's refusal to hear his grievance violated his "fundamental" right to petition the government. Harmon's second claim appears to be an equal-protection variant and is similarly based upon Evans's refusal to hear his grievance. We address each in turn.[18]

Harmon's first theory fails for the very basic reason that his attempted grievance involved a matter of private concern. Indeed, "[i]f a public employee petitions as an employee on a matter of purely private concern, the employee's First Amendment interest must give way, as it does in speech cases." *Id.* at 398. To be clear, Harmon's speech—his reporting illegal conduct, which *is* a matter of public concern—is not at issue here; rather, the issue concerns Harmon's *grievance*. By its very nature, however, an employee's grievance from termination will not ordinarily constitute a matter of public concern. *See id.* ("A petition filed with an employer using an internal grievance procedure in many cases will not seek to communicate to the public or to advance a political or social point of view beyond the employment context."); *Gibson v. Kilpatrick*, 838 F.3d 476, 487 (5th Cir. 2016) ("Internal personnel disputes and management decisions are rarely a matter of public concern."). We think the district court said it well:

> There is no evidence that Harmon was using the petition appealing his employment termination as a platform to publicly air his

---

[17] Harmon gears much of his Petition Clause arguments towards Dallas County and its decision to exclude deputy constables hired before August 19, 2003 from its grievance system. Because we hold that res judicata bars Harmon's claims against the County and Evans in his official capacity, we do not address these arguments.

[18] The district court held that Harmon's Petition Clause claims were not properly before the court but nevertheless addressed them on the merits. We limit our analysis here to the merits.

concerns about Evans's conduct. He, instead, was merely using the petition to appeal the termination of his employment as any employee, private or public, would do. In other words, the point of Harmon's appeal was not to present concerns about Evans's conduct but to seek reinstatement of his employment as deputy constable with the County.

*Harmon II*, 294 F. Supp. 3d at 571. In addition, that Harmon's remaining claim here is against Evans in his individual capacity—and thus seeks damages from him personally—underscores our conviction that Harmon's attempt to grieve his termination with Evans constituted but a matter of private concern. *See Gibson*, 838 F.3d at 487 ("The form of Gibson's suit—personal capacity—provides significant support for the conclusion that it was not a matter of public concern."). Finding no violation of Harmon's First Amendment right to petition, we agree with the district court that Evans was entitled to qualified immunity on this claim.

To succeed on his equal protection claim, Harmon must show that "two or more classifications of similarly situated persons were treated differently." *Gallegos-Hernandez v. United States*, 688 F.3d 190, 195 (5th Cir. 2012). Harmon, however, alleges in his Rule 7(a) reply that Evans "had a policy and/or a regular practice to not hear grievances of employees, including grievances by deputy constables." Thus, Harmon does not allege that Evans treated similarly situated deputy constables differently; to the contrary, Harmon alleges that Evans's regular practice was to refuse grievances all together, and his equal protection claim fails for that reason. The district court did not err in granting Evans qualified immunity on this claim.

AFFIRMED.

14