# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 25, 2021

Lyle W. Cayce
Clerk

No. 20-50917

Tettus Davis,

*Plaintiff—Appellee*,

*versus*

Jonathon Hodgkiss, *Individual*,

*Defendant—Appellant*,

_____

Elizabeth Saucedo,

*Plaintiff—Appellee*,

*versus*

Jonathon Hodgkiss, *Individual*,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:17-CV-1113
USDC No. 1:17-CV-1114

Before King, Dennis, and Ho, *Circuit Judges*.

PER CURIAM:

This is a consolidated civil rights action, in which plaintiffs-appellees allege that defendant-appellant Sergeant Jonathon Hodgkiss violated their Fourth Amendment rights by using false statements to secure a search warrant. Hodgkiss now appeals the lower court's denial of qualified immunity. For the reasons that follow, we REVERSE and RENDER summary judgment in favor of Hodgkiss.

**I.**

Many of the relevant facts in this case are in dispute. However, as is explained in greater detail *infra*, the posture of this interlocutory appeal requires that we "accept the truth of the plaintiffs' summary judgment evidence" and deprives us of jurisdiction to "review the genuineness of [the] factual disputes that precluded summary judgment in the district court." *Kinney v. Weaver*, 367 F.3d 337, 341 (5th Cir. 2004) (en banc). Indeed, "[w]here factual disputes exist in an interlocutory appeal asserting qualified immunity, we accept the plaintiffs' version of the facts as true." *Id.* at 348.

The case arises out of a criminal investigation into plaintiffs-appellees Elizabeth Saucedo and Tettus Davis by detectives of the Williamson County Sheriff's Office. Defendant-appellant Sergeant Jonathon Hodgkiss claims that he and Detective Jorian Guinn interviewed a source of information ("SOI") in March of 2015 and alleges that the SOI revealed information about illegal activities involving Davis. Hodgkiss contends that, after a recorded interview, the detectives and the SOI drove through Georgetown while the SOI provided additional information. In particular, the SOI allegedly identified the house—Saucedo's residence—from which Davis conducted illegal activities, including dealing narcotics. Plaintiffs dispute that this drive with the SOI ever occurred and emphasize that the recording of the interview does not include the statements implicating Davis as a drug dealer.

No. 20-50917

Beyond the information allegedly provided by the SOI, Hodgkiss also learned from other Williamson County deputies that the Saucedo residence was a "suspected drug distribution house due to high traffic going to and coming from the location." Surveillance was conducted at the residence, and Davis was observed there "on numerous occasions" and was seen driving a tan Buick sedan. "[B]ehavior consistent with drug sales" was also observed. A "trash run" was conducted at the residence on June 9, 2015, during which detectives recovered, *inter alia*, plastic baggies containing marijuana residue and cocaine and mail addressed to Saucedo.

Hodgkiss eventually prepared an affidavit for a search warrant of the Saucedo residence, which was signed by Williamson County District Court Judge King in June 2015. The warrant was executed on June 11, 2015, and Davis and Saucedo were subsequently arrested and charged with drug offenses. However, in May of 2016, a district court judge found that there was no probable cause for the search warrant and granted a motion to suppress all evidence obtained as a result of the search. Specifically, the judge concluded that the recording of Hodgkiss's interview with the SOI did not reflect the information that Hodgkiss claimed to have received from the SOI in his affidavit. Soon thereafter, the State moved to dismiss all charges against Davis and Saucedo.

In November of 2017, Davis and Saucedo each individually filed suit against Hodgkiss for wrongful arrest and malicious prosecution under 42 U.S.C. § 1983. These actions were consolidated for all purposes on September 11, 2018. The case was then reassigned, by consent of the parties, to United States Magistrate Judge Mark Lane on August 8, 2019.

On October 15, 2020, the Magistrate Judge denied Hodgkiss's motion for summary judgment, which was based, in relevant part, on qualified immunity. The Magistrate found that Davis and Saucedo had only pled facts

3

No. 20-50917

"giving rise to one legally cognizable claim"—a claim under *Franks v. Delaware*, 438 U.S. 154 (1978), based on Hodgkiss allegedly making false statements in his affidavit. With regard to that single claim, the Magistrate concluded both that (1) there was an issue of material fact as to whether Hodgkiss recklessly, knowingly, or intentionally made material misstatements and (2) an affidavit without those misstatements would not have shown probable cause to search the Saucedo residence. The Magistrate Judge thus denied Hodgkiss's qualified immunity defense. This interlocutory appeal by Hodgkiss followed.

## II.

It is necessary first to define the scope of our jurisdiction in this interlocutory appeal. We may exercise jurisdiction over an interlocutory appeal of a denial of summary judgment based on qualified immunity only "to the extent that the denial of summary judgment turns on an issue of law." *Hogan v. Cunningham*, 722 F.3d 725, 730 (5th Cir. 2013) (quoting *Juarez v. Aguilar*, 666 F.3d 325, 331 (5th Cir. 2011)) (cleaned up). Indeed, "[w]henever the district court denies an official's motion for summary judgment predicated upon qualified immunity, the district court can be thought of as making two distinct determinations, even if only implicitly." *Kinney*, 367 F.3d at 346. The first such determination is "that a certain course of conduct would, as a matter of law, be objectively unreasonable in light of clearly established law." *Id.* The second is "that a genuine issue of fact exists regarding whether the defendant(s) did, in fact, engage in such conduct." *Id.* We lack jurisdiction to "review conclusions of the *second* type on interlocutory appeal." *Id.* (emphasis in original). Put another way, we lack jurisdiction to hear challenges to "the district court's assessments regarding the sufficiency of the evidence." *Id.* at 347. However, we may consider the "purely legal question" of "whether a given course of conduct would be objectively unreasonable in light of clearly established law." *Id.*

No. 20-50917

The qualified immunity inquiry includes two prongs: (1) "whether the officer's alleged conduct has violated a federal right" and (2) "whether the right in question was 'clearly established' at the time of the alleged violation, such that the officer was on notice of the unlawfulness of his or her conduct." *Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019) (en banc), *cert. denied sub nom.*, *Hunter v. Cole*, 141 S. Ct. 111 (2020). The officer will be entitled to qualified immunity if no constitutional violation occurred or if the conduct "did not violate law clearly established at the time." *Id.* We have the "discretion to decide which prong of the qualified-immunity analysis to address first." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). Again, in reviewing the district court's determinations on these two prongs, we "lack jurisdiction to resolve the genuineness of any factual disputes" and may only consider "whether the district court erred in assessing the legal significance of the conduct that the district court deemed sufficiently supported for purposes of summary judgment." *Cole*, 935 F.3d at 452 (quoting *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015)).

## III.

We focus our discussion on the first prong of the qualified immunity analysis—whether Hodgkiss's alleged conduct violated a federal right. Plaintiffs have alleged a violation of their Fourth Amendment right, recognized by the Supreme Court in *Franks v. Delaware*, to be free from search pursuant to a warrant that lacks probable cause due to knowing or reckless misstatements. 438 U.S. at 155–56.

To prove such a claim under *Franks*, plaintiffs must show that (1) the affidavit supporting a warrant contained false statements or material omissions; (2) the affiant made such false statements or omissions knowingly and intentionally, or with reckless disregard for the truth; and (3) the false

5

statements or material omissions were necessary to the finding of probable cause. *See United States v. Kendrick*, 980 F.3d 432, 440 (5th Cir. 2020) (citing *United States v. Ortega*, 854 F.3d 818, 826 (5th Cir. 2017)); *Franks*, 438 U.S. at 155-56. As to the final element, falsehoods will be deemed necessary to the finding of probable cause if the affidavit, "with the . . . false material set to one side," is "insufficient to establish probable cause." *Franks*, 438 U.S. at 156.

Each of the three elements is at issue in this case. The Magistrate Judge found that issues of material fact precluded summary judgment on the first and second elements, and we may not "resolve the genuineness of [those] factual disputes." *Cole*, 935 F.3d at 452 (quoting *Trent*, 776 F.3d at 376). However, as detailed above, the remaining question is whether, "if the false statement is excised, . . . the remaining content in the affidavit fail[s] to establish probable cause." *Kendrick*, 980 F.3d at 440 (quoting *Ortega*, 854 F.3d at 826). And the "ultimate determination of probable cause . . . is a question of law." *United States v. Ho*, 94 F.3d 932, 936 (5th Cir. 1996). "In determining whether probable cause exists without the false statements," we must make "a practical, common-sense decision as to whether, given all the circumstances set forth in the affidavit [minus the alleged misstatements], there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Froman*, 355 F.3d 882, 889 (5th Cir. 2004) (alteration in original) (quoting *United States v. Byrd*, 31 F.3d 1329, 1340 (5th Cir. 1994)).

The Magistrate Judge concluded that the remaining content in the affidavit was not sufficient to establish probable cause. We disagree.

The Magistrate identified that remaining content as follows: patrol deputies believed that the Saucedo residence was a suspected drug house and that Davis and Saucedo together transported marijuana and other narcotics

No. 20-50917

to and from the residence; patrol deputies routinely observed plaintiffs leave the residence and return after short periods of time and saw multiple vehicles stop at the residence and briefly meet Davis in the street; Davis was routinely observed driving his car around the city and meeting individuals for short periods of time at various locations; Davis was pulled over in April of 2015, and officers located a "medium sized box that contained marijuana residue" and a large amount of currency "in small denominations"; and Davis was observed meeting with an individual who was then on parole for a felony drug conviction. Finally, the June 2015 trash run uncovered plastic baggies containing a substance that field-tested positive for cocaine, plastic baggies containing marijuana residue, mail addressed to Saucedo, Swisher Sweet cigars, and loose tobacco. The affidavit also recounts Davis's criminal history, which includes multiple narcotics convictions.

We have previously found probable cause based on similar facts. In *United States v. Sibley*, we held that a supporting affidavit based largely on a single trash run sufficiently connected the defendant to the apartment and "the apartment and its occupants to prior drug activity." 448 F.3d 754, 758 (5th Cir. 2006). In that case, the affidavit stated that law enforcement had received information that the apartment's occupants were dealing in drugs, garbage bags were observed being taken to the dumpster by an occupant, and marijuana was found in the bags following a trash run. *Id.*

Here, even after setting aside the allegedly false statements, there are similar facts set forth in the affidavit that establish probable cause to search the Saucedo residence. Notwithstanding the fact that only a single trash run was conducted, the evidence uncovered connected the trash bags and their contents to the Saucedo residence. Those contents included over twenty plastic baggies, many of which tested positive for narcotics. That is in addition to Davis's criminal history of engaging in drug activity, the information received from deputies about plaintiffs' suspected involvement

No. 20-50917

in drug dealing, the suspicious behavior observed at the residence, and the drugs uncovered in the vehicle which Davis drove to and from the residence. Such evidence is sufficient to support probable cause.[1] *See, e.g.*, *United States v. Sauls*, 192 F. App'x 298, 300 (5th Cir. 2006) ("[The defendant's] arrest three months earlier in the same car that was registered to a resident at [the residence] was sufficient to connect him to that residence," and "[the defendant's] prior arrests on narcotics violations and the evidence discovered in the curbside garbage were sufficient to support a reasonable belief that contraband would be found inside the residence."); *United States v. Reinholz*, 245 F.3d 765, 776 (8th Cir. 2001) (holding that drug paraphernalia and syringes with drug residue found in a single trash run, coupled with occupant's prior drug conviction, was sufficient to establish probable cause for search warrant), *cert. denied*, 534 U.S. 896 (2001).

Accordingly, we find that, with the allegedly "false statement[s] . . . excised," the affidavit's remaining content is enough to establish probable cause. *Kendrick*, 980 F.3d at 440 (quoting *Ortega*, 854 F.3d at 826). We thus conclude that Hodgkiss is entitled to summary judgment on plaintiffs' *Franks* claim as there was no constitutional violation.

---

[1] Indeed, though plaintiffs cite a Sixth Circuit opinion holding that a single trash run is not enough, alone, to support probable cause, that same opinion emphasized that the defendant's history of drug charges had been excluded from the supporting affidavit. *See United States v. Abernathy*, 843 F.3d 243, 248 (6th Cir. 2016). Without that "critical missing ingredient," the court held that the remining evidence gathered in the trash run was not enough to support probable cause. *Id.* at 255. We need not decide whether a single trash run may establish probable cause by itself because there are more supporting facts set forth in the affidavit at issue here.

No. 20-50917

## IV.

Based on the foregoing, we REVERSE the Magistrate Judge's order and RENDER summary judgment for defendant-appellant Sergeant Hodgkiss on plaintiffs-appellees' claim of liability under *Franks*.