# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 23, 2022

Lyle W. Cayce
Clerk

No. 21-20289

Saowalak "Jenny" Pimpanit,

*Plaintiff—Appellant*,

*versus*

Phumswarng, Incorporated, *doing business as* Thai Gourmet Restaurant; Sawonya Tabers,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:20-CV-289

Before Jones, Higginson, and Duncan, *Circuit Judges*.

Per Curiam:[*]

Saowalak "Jenny" Pimpanit worked as a server at a Thai restaurant. Suspecting she and her co-workers were being underpaid, Pimpanit removed data reports from the restaurant. She was fired. Pimpanit and her co-workers sued the restaurant's owners in Texas state court for underpayment of

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-20289

wages. Those claims settled. Pimpanit alone then sued the same defendants in federal court, this time for unlawful retaliation. The district court dismissed the federal case, concluding it was barred by the preclusive effect of the state court settlement. We reverse and remand.

## I.

Appellee Phumswarng, Inc. employed Appellant Pimpanit as a server at Thai Gourmet Restaurant from March 2017 to March 2018. The restaurant is owned by Appellee Sawanya Phumswarng.[1] In late 2017 or early 2018, some employees began complaining of late pay and suspected Thai Gourmet was "tak[ing] money from the tips customers were leaving." Pimpanit was one of these employees. In February 2018, the group voiced their concerns to the manager, who asked them to write down their questions so she could consult with the owners. The employees provided a signed list of questions. About a week later, management met with the employees, but many felt their questions were still unanswered.

Pimpanit decided to take matters into her own hands by comparing her pay to the restaurant's daily reports. These reports included a trove of data on tip collection, food sold, volume of cash sales, credit cards used, and how much each server sold. Pimpanit obtained the reports from a cashier and brought them home to compare the reports to her take-home pay. Upon

---

[1] When Pimpanit sued, Sawanya's last name was Tabers.

discovering Pimpanit took the reports off restaurant premises, Phumswarng fired Pimpanit.[2]

In July 2018, seven former and current employees, including Pimpanit, sued Appellees in Texas state court, claiming breach of a fiduciary relationship under Texas law as well as violations of the Fair Labor Standards Act ("FLSA") for unpaid minimum wages and overtime, withheld tips, and retaliatory termination of Pimpanit. *See* 29 U.S.C. §§ 201 *et seq.* The employees amended their petition to proceed only on their underpayment claims, removing factual allegations related to Pimpanit's termination. The amended petition included nothing about the list of questions, the unsuccessful meeting, Pimpanit's removal of the reports, or her subsequent termination. The parties eventually settled the state litigation, with Pimpanit receiving $23,062.64 for releasing her claims for minimum wages, overtime, and tip theft. The release included a clause stating that it did not extend to "any claims arising out of the circumstances of [Pimpanit's] termination."[3]

About six weeks later, Pimpanit filed the present suit in federal court, asserting unlawful retaliation under the FLSA. She claimed she was fired for engaging in protected conduct, namely, "protesting Thai Gourmet's illegal actions and obtaining the evidence to prove her allegations." Appellees moved for summary judgment, which the district court granted. The court agreed with Appellees that *res judicata* barred the retaliation claim because (1) Pimpanit should have raised the claim in the state suit, (2) both suits arise

---

[2] Employees were never expressly instructed not to take the daily reports from the restaurant. But, as Appellees point out, there are various provisions in their manual prohibiting theft of restaurant property and disclosure of confidential information.

[3] On appeal, the parties dispute whether the release bars Appellees' invocation of *res judicata*. Because we decide *res judicata* does not apply, we need not address this issue.

No. 21-20289

from a common nucleus of operative facts, and (3) the settlement release did not preclude Appellees' *res judicata* defense. Pimpanit timely appealed.

## II.

We review a summary judgment *de novo*. *Green v. Life Ins. Co. of N. Am.*, 754 F.3d 324, 329 (5th Cir. 2014) (citation omitted); *see* Fed. R. Civ. P. 56(a). "The *res judicata* effect of a prior judgment is a question of law that we review *de novo*." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 313 (5th Cir. 2004) (citation omitted).

## III.

"Under Texas[4] law, *res judicata* requires '(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action.'" *Harmon v. Dallas County*, 927 F.3d 884, 890 (5th Cir. 2019) (quoting *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996)). Neither party disputes that the first two conditions are met. So we must address only the third—whether Pimpanit's federal retaliation claim is "based on the same claims as were raised or could have been raised in the [state] action." *Ibid.*

To answer that question, Texas courts take a "'transactional' approach" under which a prior judgment bars a second suit "not only on matters actually litigated, but also on causes of action or defenses which *arise out of the same subject matter* and which might have been litigated in the first

---

[4] The district court cited both Texas and federal *res judicata* standards, but Texas law plainly applies. *See Harmon*, 927 F.3d at 890 ("We apply Texas law to determine the *res judicata* effect of a Texas judgment . . . ." (citations omitted)); *see also Matter of 3 Star Props., L.L.C.*, 6 F.4th 595, 604–05 (5th Cir. 2021) ("Texas law, not federal law, applies when a federal court determines the preclusive effect of a Texas judgment.").

suit." *Ibid.* (emphasis added) (quoting *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 798 (Tex. 1992)). How to pinpoint the prior suit's "subject matter," though? That "necessarily requires an examination of the factual basis of the claim or claims in the prior litigation." *Barr v. Resol. Tr. Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 630 (Tex. 1992). And we must do so "pragmatically, 'giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a trial unit conforms to the parties' expectations or business understanding or usage.'" *Id.* at 631 (quoting Restatement (Second) of Judgments § 24(2)); *see also Sims v. City of Madisonville*, 894 F.3d 632, 644–45 (5th Cir. 2018) (citing same factors under Texas law); *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1342 (5th Cir. 1996) (citations omitted).

Pimpanit argues that, under these principles, her federal retaliation claim does not arise out of the same subject matter as the underpayment claims settled in her prior state suit. We agree. Comparing the two complaints shows the facts required to prove each claim are distinct. *See Weaver v. Tex. Cap. Bank N.A.*, 660 F.3d 900, 907–08 (5th Cir. 2011) (asking whether second claim rests on "same factual foundation" as first claim). In the state case, the key facts concerned what hours Pimpanit worked, whether she received all her tips, and whether she was paid according to her minimum wage and hours. *See, e.g.*, *Steele v. Leasing Enter., Ltd.*, 826 F.3d 237, 242 (5th Cir. 2016) ("Under § 203(m), an employer can only claim a tip credit if all tips received by a tipped employee have been retained by the employee . . . . The employer carries the burden to prove its entitlement to the tip credit." (cleaned up)); *Harvill v Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005) ("An employee bringing an action pursuant to the FLSA, based on unpaid overtime compensation, must first demonstrate that she has performed work for which she alleges she was not compensated." (citing

*Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946))). The amended state petition did not mention Pimpanit's termination or her taking the reports. By contrast, her federal retaliation claim depends on precisely those facts—namely, whether Pimpanit's taking the records was a protected activity and whether doing so was the reason for her termination. *See Starnes v. Wallace*, 849 F.3d 627, 631–32 (5th Cir. 2017) (explaining that a *prima facie* case of retaliation under the FLSA requires: "(1) participation in a protected activity under the FLSA; (2) an adverse employment action; and (3) a causal link between the activity and the adverse action" (citing *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 624 (5th Cir. 2008))). Appellees are therefore mistaken in arguing that the facts underlying both suits are "nearly identical."

To be sure, the two suits involve related facts: suspicions about underpaid wages led to Pimpanit's actions that allegedly caused her firing. So, her federal complaint mentions "Thai Gourmet's scheme to steal servers' tips," but merely to contextualize her retaliation claim. Those facts do not make up the "subject matter" of her federal retaliation complaint, however, any more than the circumstances surrounding Pimpanit's termination make up the "subject matter" of her state wage suit. Mere relatedness between two sets of facts does not create one transaction. *See Barr*, 837 S.W.2d at 631 ("A 'transaction' under the Restatement [of Judgments] is not equivalent to a sequence of events . . . .").[5]

Nor would Pimpanit's state and federal claims present "a convenient trial unit" such that they should have been litigated together. *Barr*, 837

---

[5] *See also United States ex rel. Laird v. Lockheed Martin Eng'g & Sci. Servs. Co.*, 336 F.3d 346, 358–59 (5th Cir. 2003) (finding *res judicata* inapplicable despite fact that employees' first wrongful discharge suit and second False Claims Act action both related

S.W.2d at 631. Her federal claim that Appellees retaliated against her requires proof of different facts than her state claim that they underpaid her wages. *Compare Starnes*, 849 F.3d at 631–32 (elements of retaliation claim), *with Steele*, 826 F.3d at 242 (elements of wage claim). Specifically, the state suit turned on evidence of pre-termination wrongdoing, while Pimpanit's present retaliation suit turns on the termination itself. Thus, Pimpanit's state and federal claims are not "[d]ifferent theories of recovery based on the same operative facts," *Sims*, 894 F.3d at 645 (citation omitted), but are different causes of action based on different operative facts. Her retaliation claim is therefore not barred by *res judicata*.

Appellees argue that because Pimpanit could have brought her retaliation claim in the state suit, *res judicata* bars the present litigation. True, Pimpanit might have joined her retaliation claim in the state case. *See* Tex. R. Civ. P. 51(a).[6] That was evidently her initial plan, given that her petition originally included the claim until it was omitted in the amended petition.[7]

---

to employer's inaccurate reporting), *abrogated on other grounds by Rockwell Int'l Corp. v. United States*, 549 U.S. 457 (2007).

[6] It is also true that employment discrimination and retaliation claims are usually brought together. *See, e.g.*, *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 301 (5th Cir. 2020); *Septimus v. Univ. of Houston*, 399 F.3d 601 (5th Cir. 2005); *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 257 (5th Cir. 2001); *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 441 (Tex. 2004). But the facts of this case are unusual.

[7] Appellees cite *Citizens Insurance Co. of America v. Daccach*, 217 S.W.3d 430 (Tex. 2007), for the proposition that "a plaintiff is prohibited from abandoning claims and subsequently asserting them when the claims could have been litigated in the prior suit." To the extent they suggest that abandoned claims are *per se* barred by *res judicata*, they are wrong. *Citizens Insurance* involved the interplay between Texas Rule of Civil Procedure 42 and *res judicata* in the class action context. *Id.* at 448–51. In holding that Rule 42 is no exception to *res judicata*, the Texas Supreme Court did not carve out a special standard for abandoned claims. *See id.* at 450. Rather, it clarified that class actions are held "to the same *res judicata* standards as other forms of litigation" and reiterated that the *res judicata*

But Texas law rejects any "rule [that] would require that all disputes existing between parties be joined, regardless of whether the disputes have anything in common." *Barr*, 837 S.W.2d at 629; *see also 3 Star Props.*, 6 F.4th at 607 (noting "*res judicata* does not bar a defendant in one action from later bringing a claim it was not required to bring previously" (citation omitted)). Accepting Appellees' argument would ignore black-letter Texas law that applies *res judicata* only to claims that "arise out of the same subject matter." *Harmon*, 927 F.3d at 890 (quoting *Getty Oil*, 845 S.W.2d at 798). As explained, Pimpanit's retaliation claim does not depend on "the same operative facts" as her underpayment claims, *ibid.*, and so she was not required to litigate both claims in the state suit.

IV.

The district court's judgment is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.

---

standard for "abandoned" claims still requires that they "aris[e] from the same subject matter." *Id.* at 450–51.