# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 29, 2022

Lyle W. Cayce
Clerk

No. 21-20678

Dennis Laviage,

*Plaintiff—Appellee*,

*versus*

Jesse E. Fite,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:20-CV-84

Before King, Duncan, and Engelhardt, *Circuit Judges*.
Stuart Kyle Duncan, *Circuit Judge*:

Dennis Laviage was prosecuted for knowing failure to report scrap metal transactions to the Texas Department of Public Safety, as required by state law. A jury acquitted him. Laviage then sued Houston Police Sergeant Jesse Fite, claiming Fite had provided false information that led to Laviage's arrest and prosecution. *See Franks v. Delaware*, 438 U.S. 154 (1978). The district court, concluding Fite's affidavit omitted material facts, denied him qualified immunity. We reverse and render judgment for Fite.

No. 21-20678

I.

Dennis Laviage is president and CEO of C&D Scrap Metal in Houston, Texas.[1] C&D's operations are governed by the Texas Occupations Code §§ 1956.001 *et seq.*, and City of Houston ordinances. These require metal recycling entities to report certain transactions. C&D uses Scrap Dragon, a computer program, to generate reports and send them to the Texas Department of Public Safety ("DPS"), as required by § 1956.036,[2] and to a national investigation system called Leads Online, as required by a directive of the Houston Police Department's Metal Theft Unit. After a 2015 software update, Scrap Dragon continued to generate the city-mandated reports but sometimes failed to generate the state-mandated reports.

In August 2015, Sergeant Jesse Fite, a Houston Police Department officer in charge of the Metal Theft Unit, learned of C&D's reporting discrepancies and confronted Laviage. Laviage explained the software glitch and represented that C&D was working to resolve the issue. Unable to fix the problem, C&D personnel began recording data for scrap metal purchases and filing the reports with DPS manually as missed reports were discovered. All purchases were timely reported to the City of Houston through Leads Online. But Fite discovered approximately twenty-four C&D reports that had not been filed with DPS.

Relying on these missing reports, Fite persuaded an assistant district attorney to file a criminal information against Laviage in March 2016. Fite's supporting affidavit did not include information about Scrap Dragon's

---

[1] We take the facts from Laviage's first amended complaint, accepting all well-pleaded facts as true and viewing them in the light most favorable to Laviage. *Johnson v. Halstead*, 916 F.3d 410, 414 n.1 (5th Cir. 2019) (citation omitted).

[2] Unless otherwise noted, statutory references are to the Texas Occupations Code.

2

No. 21-20678

software malfunctions. Laviage was arrested, charged with violating the state reporting requirements, and eventually tried before a jury. In August 2018, the jury found Laviage not guilty. A state judge signed an agreed order expunging all records of the prosecution.

Laviage sued Fite under 42 U.S.C. § 1983, alleging Fite had violated his Fourth Amendment rights.[3] Specifically, Laviage contended that by "intentionally and willfully omitt[ing] critical and exculpatory facts" from his affidavit, Fite triggered the issuance of an arrest warrant that lacked probable cause, resulting in Laviage's prosecution. Fite moved for judgment on the pleadings based on qualified immunity. The district court denied Fite's motion. Fite appealed.

## II.

"An order denying qualified immunity, to the extent it turns on an issue of law, is immediately appealable." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc) (cleaned up). We review *de novo* the denial of a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), applying the same standard for Rule 12(b)(6) motions to dismiss for failure to state a claim. *Harmon v. Dallas Cnty.*, 927 F.3d 884, 892 (5th Cir. 2019) (per curiam) (citation omitted). To survive a Rule 12(c) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019) (cleaned up).

---

[3] Laviage initially sued in state court, alleging only state tort claims. When he amended his complaint to include § 1983 claims, Fite timely removed the case to federal court.

No. 21-20678

III.

Qualified immunity protects public officials from liability if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To overcome qualified immunity, the plaintiff must allege facts showing (1) the officer violated a constitutional right, and (2) "the right was 'clearly established' at the time of the challenged conduct." *Templeton v. Jarmillo*, 28 F.4th 618, 621 (5th Cir. 2022) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). We may address either prong or both. *Harmon*, 927 F.3d at 892.

A.

Under prong one, we ask whether Laviage alleged a Fourth Amendment violation. In *Franks v. Delaware*, the Supreme Court held an officer violates the Fourth Amendment if he deliberately or recklessly provides false information necessary to secure an arrest warrant. 438 U.S. at 171; *see also, e.g.*, *Anokwuru v. City of Houston*, 990 F.3d 956, 964 (5th Cir. 2021). The elements of a *Franks* claim are: "(1) the affidavit supporting a warrant contained false statements or material omissions; (2) the affiant made such false statements or omissions knowingly and intentionally, or with reckless disregard for the truth; and (3) the false statements or material omissions were necessary to the finding of probable cause." *Davis v. Hodgkiss*, 11 F.4th 329, 333 (5th Cir. 2021) (per curiam) (citations omitted).[4] Laviage alleges only that Fite's affidavit had a material omission—

---

[4] Although "[t]he *Franks* case arose in the context of a search warrant, . . . its rationale extends to arrest warrants." *Terwilliger v. Reyna*, 4 F.4th 270, 281 (5th Cir. 2021) (citation omitted).

specifically, it did not mention Scrap Dragon's software malfunctions.[5] *See, e.g.*, *Melton v. Phillips*, 875 F.3d 256, 264 (5th Cir. 2017) (en banc) (*Franks* liability may be premised on an officer's "mak[ing] knowing and intentional *omissions* that result in a warrant being issued without probable cause" (citation omitted)). Had those computer glitches been noted, Laviage claimed, Fite's affidavit would have been "insufficient to establish probable cause." *Davis*, 11 F.4th at 333 (quoting *Franks*, 438 U.S. at 156).

The district court agreed with Laviage. While the court's reasoning is terse, it suggests the unmentioned Scrap Dragon glitch would have showed Laviage did not "intentionally and knowingly" fail to file reports. The court added that "[t]he jury's decision to throw out the claims illustrates the baseless foundation for the initial charge." On appeal, Fite argues the district court misinterpreted the reporting requirements. He also argues that, even had the computer problem been noted, his affidavit still would have established probable cause. We agree with Fite on both points.

The Texas Occupations Code imposes various recordkeeping and reporting requirements on metal recycling entities. *See, e.g.*, § 1956.001(7) (defining "metal recycling entity"); §§ 1956.033–.034 (recordkeeping); § 1956.036 (reporting). As relevant here, a person commits a Class A misdemeanor by "knowingly" failing—within two working days after a qualifying transaction—to "send an electronic transaction report to the department via the department's Internet website." §§ 1956.040(a-1),

---

[5] Laviage also alleged the affidavit did not mention that Laviage submitted identical reports to the city through Leads Online. But, as the district court found, Fite's affidavit did include this fact. According to the criminal information, Fite reported that "the regulated materials purchased by the businesses reported to Leads Online[,] an internet based company contracted by the City of Houston to collect transactions of scrap metal businesses[,] had not been reported to TxDPS[.]"

1956.036(a).[6] Alternatively, reports can be submitted "by facsimile" if a person applies for (and receives) a waiver based on "an affidavit stating that the entity does not have an available and reliable means of submitting the transaction report electronically." § 1956.036(d).

Contrary to the district court's ruling, C&D's computer problems were not material to whether probable cause existed to suspect Laviage had violated the reporting provisions. By his own admission, Laviage did not submit approximately twenty-four required reports to DPS. Laviage also knew Scrap Dragon was failing to send reports to DPS. His brief concedes that "in roughly August 2015,"—about seven months before his March 2016 arrest—"Fite told Mr. Laviage about the reporting discrepancies." Laviage also knew there was an alternate way of complying (fax), but never sought permission to use it. As Fite correctly argues, "according to Laviage's pleadings, he continued to only submit the reports via Scrap Dragon despite knowing that Scrap Dragon was not meeting the reporting requirements under the statute and despite knowing there was a permissible reporting alternative." Viewing these facts, an "objectively reasonable officer" could have concluded there was a "probability or substantial chance" that Laviage had violated the statute. *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (cleaned up).

In response, Laviage argues the Scrap Dragon glitch shows he did not "knowing[ly] and intentional[ly]" fail to report, but only did so "inadvertently." We disagree. The statute punishes "knowing" failures, not "knowing and intentional" failures. *See* § 1956.040(a-1) ("A person commits an offense if the person *knowingly* violates Section . . . 1956.036(a)."

---

[6] The offense is a "state jail felony," however, if the person was previously convicted of violating the same subsection. § 1956.040(a).

(emphasis added)).[7] "Knowing" is a less culpable mental state than "intentional."[8] Even taking Scrap Dragon's foibles into account, one could reasonably believe Laviage knew that continuing to use the flawed system would result in reporting failures. *See* TEX. PEN. CODE § 6.03 (one "acts knowingly . . . when he is aware that his conduct is reasonably certain to cause the result"). Indeed, one could think Scrap Dragon's flaws made Laviage's knowledge *more*, not less, likely.[9] He had been warned about the system's deficiencies months before his arrest and yet failed to use the statutory safe haven. So, even had Fite mentioned the Scrap Dragon glitch, his affidavit still would have shown probable cause. *See, e.g.*, *Terwilliger v. Reyna*, 4 F.4th 270, 282 (5th Cir. 2021) (observing "[p]robable cause . . . turns 'on the assessment of probabilities in particular factual contexts'" (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003))).

In sum, Laviage failed to allege a Fourth Amendment violation.

## B.

But even assuming a Fourth Amendment violation, the claimed right was not "'clearly established' at the time of the challenged conduct." *Templeton*, 28 F.4th at 621 (quoting *Ashcroft*, 563 U.S. at 735). "[A] right is

---

[7] The district court also thought the statute penalized only one who "intentionally and knowingly" failed to file required reports.

[8] *See* TEX. PENAL CODE § 6.02(d)(1)–(2) (ranking "intentional" as a higher mental state than "knowing"); *see also Howard v. State*, 333 S.W.3d 137, 139 (Tex. Crim. App. 2011) (observing "knowingly" is a "less-culpable mental state" than "intentionally").

[9] The jury evidently did not think so, because it acquitted Laviage. The district court took this to undermine Fite's affidavit: "The jury's decision to throw out the claims illustrates the baseless foundation for the initial charge." Not so. "[A]n acquittal does not necessarily signal an absence of probable cause for an arrest, for the standards for a determination of probable cause and for a criminal conviction markedly differ." *Brumfield v. Jones*, 849 F.2d 152, 155 (5th Cir. 1988).

clearly established only if it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Betts v. Brennan*, 22 F.4th 577, 584 (5th Cir. 2022) (cleaned up). The right must be framed "with specificity and granularity," *Morrow v. Meachum*, 917 F.3d 870, 874–75 (5th Cir. 2019), not "at a high level of generality," *Betts*, 22 F.4th at 584 (citation omitted). Accordingly, qualified immunity shields officers "unless existing precedent 'squarely governs' the specific facts at issue," *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (citation omitted), such that the question has been placed "beyond debate," *Ashcroft*, 563 U.S. at 741.

Instead of engaging this prong of the analysis, the district court only recited the general contours of *Franks* liability. Much more is needed. *See id.* at 742 ("We have repeatedly told courts . . . not to define clearly established law at a high level of generality." (citation omitted)). For his part, Laviage argues he need not identify a squarely-governing precedent because Fite's *Franks* violation was "obvious." We disagree. It is far from obvious that the Scrap Dragon malfunction was "material" to probable cause. *See supra.* To be sure, "[t]he law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc) (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)). But that provides no relief where, as here, Laviage fails to "identify a single case to support [his] argument" and the "the district court d[oes] not fix [that failure]" or "assess the clearly established law applicable." *Joseph v. Bartlett*, 981 F.3d 319, 345–46 (5th Cir. 2020). In any event, this situation is nothing like cases involving violations so blatant that officers need no on-point precedent to know their conduct is illegal. *Cf., e.g.*, *Hope*, 536 U.S. at 739–41, 745 (denying qualified immunity despite no "materially similar" precedent, given "[t]he obvious cruelty inherent" in

handcuffing a prisoner to a post for seven hours in the sun); *Taylor v. Riojas*, 141 S. Ct. 52, 53 (2020) (per curiam) (denying qualified immunity without a materially similar case where prisoners were housed in "deplorably unsanitary conditions for . . . an extended period of time").

In sum, even assuming Laviage alleged a Fourth Amendment violation, the right was not clearly established at the time.

\*    \*    \*

For either of the foregoing reasons, Fite was entitled to qualified immunity. We REVERSE the district court's judgment and RENDER judgment for Fite.